# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

GENESIS HEALTH VENTURES, INC.,
*et al.*,

Debtors,

Case No. 00-2692 (PJW)
Jointly Administered

RICHARD HASKELL, *et al.*,

Plaintiffs.

v.

GOLDMAN, SACHS & CO., *et al.*,

Defendants.

Adv. Pro. No.: 04-53375 (PJW)

## DEFENDANTS' JOINT REPLY IN SUPPORT
## OF MOTION FOR LEAVE TO APPEAL

Teresa K. D. Currier (3080)
Peter J. Duhig (4024)
BUCHANAN INGERSOLL & ROONEY, P.C
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
(302) 552-4200

Attorneys for Defendant Mellon Bank, N.A.

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
(212) 421-2150

Attorneys for Defendant Mellon Bank, N.A. with
respect to plaintiffs Charles L. Grimes, Louis IG
Ireland Trust, C. Yvonne Cooke, Jane G. Brown,
Serena R. Schwartz and Gordon W. Chaplin

Menachem O. Zelmanovitz
Matthew W. Olsen
James L. Baribeau
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant Mellon Bank, N.A.
with respect to all Plaintiffs other than
Charles L. Grimes, Louise IG Ireland Trust,
C. Yvonne Cooke, Jane G. Brown,
Serena R. Schwartz and Gordon W. Chaplin

DEL1 65651-1

Steven K. Kortanek (3106)
Morton R. Branzburg
KLEHR, HARRISON, HARVEY,
  BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19809-3062
(302) 426-1189

　　　- and -

Sheldon Raab
Eric A. Hirsch
Sabita Krishnan
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000


Attorneys for Defendant
Goldman, Sachs & Co.



Robert S. Brady (2847)
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6690

　　　- and -

Paul V. Shaloub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York 10019-6099
(212) 728-8000


Attorneys for Defendant George V. Hager


Dated: February 6, 2007

Daniel K. Hogan (2814)
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware 19806
(302) 656-7540

　　　- and -

Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Ave., Suite 700
Dallas, Texas 75219
(214) 560-2206


Attorneys for Defendant
Highland Capital Management, L.P.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT .........................................................................1

ARGUMENT...................................................................................................2

I.     THE INTERLOCUTORY APPEAL SHOULD BE PERMITTED ........................2

       A.    The December 13 Opinion Presents "Substantial Grounds For A Difference of Opinion" ...............................................................................2

       B.    This Dispute Involves A Controlling Question of Law ............................10

       C.    Consideration of These Issues Now Could Advance the Ultimate Termination of This Litigation By Years...................................................11

II.    IF LEAVE IS GRANTED, THE DISTRICT COURT SHOULD CONSIDER ALL ISSUES RAISED BY THE DECEMBER 13 ORDER ...............................13

CONCLUSION..............................................................................................20

# TABLE OF AUTHORITIES

## CASES

Page

In re 680 Fifth Ave. Assocs. v. EGI Co. Services, Inc.,
    209 B.R. 314 (Bankr. S.D.N.Y. 1997)....................................................................3

A.B.H. Investments, Inc. v. Narven Enters. Inc.,
    2003 Cal. App. Unpub. LEXIS 11126 (Cal. Ct. App. Nov. 25, 2003) ....................7

Aboudaram, S.A. v. De Groote,
    No. 05-988, 2006 U.S. Dist. LEXIS 26161 (D.D.C. May 4, 2006) ...............16 n.15

Amkor Tech., Inc. v. Alcatel Bus. Sys.,
    No. 02-3156, 2003 U.S. Dist. LEXIS 23703 (E.D. Pa Dec. 29, 2003) ...................11

In re Bertoli, 58 B.R. 992 (D.N.J. 1986), aff'd, 812 F.2d 136 (3d Cir. 1987) ........ 11-12

Bradburn Parent Teacher Store, Inc. v. 3M,
    No. Civ. A. 02-7676, 2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) ........................11

Browning v. Prostok, 165 S.W.2d 336 (Tex. 2005) ......................................... 3-6, 8 n.9

Calhoun v. Yamaha Motor Corp., U.S.A., 40 F.3d 622 (3d Cir. 1994).................. 13-14

Churchill v. Star Enterprises, 183 F.3d 184 (3d Cir. 1999) .........................................17

CIGNA v. Alexander,
    991 F. Supp. 427 (D.N.J. 1998), aff'd, 172 F.3d 859 (3d Cir. 1998) .....................19

In re Circle K Corp., 171 B.R. 666 (Bankr. D. Ariz. 1994).......................................7, 9

In re Circle K Corp., 181 B.R. 457 (Bankr. D. Ariz. 1995)............................................6

In re Coffee Cupboard, Inc., 119 B.R. 14 (E.D.N.Y. 1990) .................................. 6-7, 10

In re Crown-Globe, Inc., 107 B.R. 60 (Bankr. E.D. Pa. 1989)................................4 n.3

Donaldson v. Bernstein, 104 F.3d 547 (3d Cir. 1997) ............................................7, 10

Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330 (3d Cir. 2000) ...........16 n.16

In re Emmer Bros. Co., 52 B.R. 385 (D. Minn. 1985)........................................... 6-7, 10

# TABLE OF AUTHORITIES

**Page**

In re Genesis Health Ventures, Inc., 324 B.R. 510 (Bankr. D. Del. 2005)...............................8, 14

In re Genesis Health Ventures, Inc., 340 B.R. 729 (D. Del. 2006) ...................................... 8-9, 15

In re Grouphealth Partnership, Inc.,
  Misc. No. 92-0124, 1992 WL 96333 (E.D. Pa. Apr. 21, 1992) ..........................................3 n.2

Hotel Corp. of the South v. Rampart 920, Inc.,
  46 B.R. 758 (E.D. La. 1985), aff'd without op., 781 F.2d 901 (5th Cir. 1986)...........3, 5, 8 n.9

Johnson v. Alldredge, 488 F.2d 820 (3d Cir. 1973) ......................................................14

Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974) ...........................................10

In re Marvel Entm't Group, Inc., 209 B.R. 832 (D. Del. 1997) ..........................................3 n.2, 10

In re PHP Healthcare Corp.,
  No. 98-2608, 2002 WL 923932 (Bankr. D. Del. May 7, 2002) .....................................16 n.15

Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood,
  605 N.E.2d 318 (N.Y. 1992) .................................................................................20

In re Public Service Co. of New Hampshire, 43 F.3d 763 (1st Cir. 1995) ....................... 3-5, 8 n.9

In re Public Service Co. of New Hampshire,
  148 B.R. 702 (Bankr. D.N.H. 1992), aff'd, 848 F. Supp. 318 (D.R.I. 1994),
  aff'd, 43 F.3d 763 (1st Cir. 1995) ......................................................................... 4-5

In re Sandenhill, Inc., 304 B.R. 692 (E.D. Pa. 2004)................................................... 3 n.2, 10-11

In re School Asbestos Lit., 789 F.2d 996 (3d Cir. 1986) ...........................................13

Smolensky v. McDaniel, 144 F. Supp.2d 611 (E.D. La. 2001) ...................................19

Steel Partners II, L.P. v. Aronson,
  No. 05-CV-1983, 2006 U.S. Dist. LEXIS 92772 (D.N.J. Dec. 22, 2006) ..............................11

Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542 (3d Cir. 2006) ..........................17

Williams v. Texaco, 165 B.R. 662 (D.N.M. 1994) .......................................................8

Witowski v. Welch, 173 F.3d 192 (3d Cir. 1999) .......................................................11

# TABLE OF AUTHORITIES

**Page**

<u>Yamaha Corp. v. United States</u>, 961 F.2d 245 (D.C. Cir. 1992) ..................................................18

## STATUTES AND RULES

11 U.S.C. § 1141..............................................................................................................16

11 U.S.C. § 1144.......................................................................................................... *passim*

Fed. R. Bankr. P. 7015....................................................................................................7 n.7

Fed. R. Bankr. P. 8002..................................................................................................15 n.14

Fed. R. Bankr. P. 9024....................................................................................................16

Fed. R. Civ. P. 9(b) ..................................................................................................... 18-19

Fed. R. Civ. P. 15(c) ....................................................................................................7 n.7

Fed. R. Civ. P. 60(b) .......................................................................................................16

Restatement (Second) of Judgments § 25 cmt. e (1982) ...............................................17

Restatement (Second) of Torts § 552 (1977)................................................... 19 & n.23

## OTHER AUTHORITIES

19 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 203.32 [3][a]
    (3d ed. 1997 & Supp. 2006)......................................................................................14

1-3 COLLIER ON BANKRUPTCY § 3.01[4][a] (15th ed. rev. 2006) ........................................17 n.17

8 COLLIER ON BANKRUPTCY § 1144 04 [02] (15th ed. rev. 2006) ..................................................9

DEL1 65651-1

## PRELIMINARY STATEMENT

Attempting to refute our showing that there are "substantial grounds for a difference of opinion" as to the December 13 Order,[1] Plaintiffs argue that the Bankruptcy Court's determination is consistent with the prior case law. But at least three cases decided by appellate courts -- two federal Courts of Appeals and the highest court of a State -- have squarely held that creditors who bring post-bankruptcy actions that seek in effect to increase their distributions relative to other creditors cannot avoid Section 1144 by styling their claim as one for money damages. Plaintiffs' claims in this case are squarely based on the theory that they received too little under the Plan -- and that the Senior Lenders correspondingly received too much -- and the money damages they seek are purportedly to compensate them for this alleged misallocation. These are precisely the kind of claims that the aforementioned appellate cases barred under Section 1144, which is intended to afford finality to all participants in a bankruptcy proceeding, not just the debtor. These cases establish, beyond any conceivable doubt, that there are -- at the very least -- "substantial grounds for a difference of opinion" as to the applicability of Section 1144 to the claims asserted here.

Plaintiffs also argue that the § 1144 issue does not present a "pure question of law." This argument makes no sense. The nature of Plaintiffs' allegations (that they were entitled to receive more than they were awarded under the Plan) is manifest simply by reading the Complaint itself. Whether § 1144 bars this type of claim is a prototypical issue of law, as the Bankruptcy Court and this Court already recognized in dismissing the

---

[1]    Capitalized terms used herein shall have the same definitions as set forth in our moving brief.

claims against the Debtor.  There are no contested "facts" that need to be determined on this motion.

Plaintiffs further argue that this appeal will not advance the ultimate termination of this litigation because an appeal may "waste[ ] additional months" if it is unsuccessful. Pl. Mem. at 18.  This is not the standard.  If it were, no application for leave to appeal could ever be granted, as every appeal by definition takes time.  As Plaintiffs themselves concede, if Defendants prevail on appeal, the ultimate termination of this litigation will be "hasten[ed]."  Pl. Mem. at 18.  Indeed, a successful appeal here will avoid the necessity of re-litigating the entire Genesis Plan confirmation proceedings and, as we discuss below, will avoid the possible need for multiple trials in this case.

Finally, Plaintiffs argue that if leave to appeal is granted, this Court should not consider other issues raised by the December 13 Order.  The Third Circuit has consistently held, however, that on an interlocutory appeal the reviewing court should consider all grounds that might require a reversal of the order appealed from.  What is more, the other issues raised in our moving brief are themselves dispositive of this litigation and would themselves satisfy the criteria for interlocutory review.

## ARGUMENT

## I.    THE INTERLOCUTORY APPEAL SHOULD BE PERMITTED

### A.    The December 13 Opinion Presents "Substantial Grounds For A Difference of Opinion"

Plaintiffs argue that the December 13 Order, which allowed the same claims that were dismissed against the Debtor under § 1144 to proceed against the remaining Defendants, does not depart from established law or otherwise present "substantial

grounds for a difference of opinion".[2]  According to Plaintiffs, the decided cases do not

bar claims for damages so long as these claims do not literally seek to alter the

distributions under a plan of reorganization.  That is simply not accurate.  We have cited

three appellate-level cases -- a First Circuit case, a Fifth Circuit case, and a case from the

highest court in the State of Texas -- where plaintiffs styled their complaints as alleging

fraud claims for damages.  In each case the court dismissed the complaint on the grounds

that plaintiffs were effectively attempting to revoke the plan because the reality was that

the claims were simply an expedient to alter creditor distributions.

      None of the cases we cited involve plaintiffs who were so guileless as to explicitly

style their complaints as applications to revoke a confirmed Plan.  Instead, like Plaintiffs

here, those plaintiffs characterized their complaints as claims for money damages based

on allegations of fraud.  See In re Public Service Co. of New Hampshire, 43 F.3d 763 (1st

Cir. 1995) (dismissing complaint alleging federal securities law violations and common

law fraud); Hotel Corp. of the South v. Rampart 920, Inc., 46 B.R. 758, 764 (E.D. La.

1985) (dismissing complaint "claiming RICO, Bankruptcy, securities laws and state law

violations"), aff'd without op., 781 F.2d 901 (5th Cir. 1986); In re 680 Fifth Ave.

Assocs., 209 B.R. 314 (Bankr. S.D.N.Y. 1997) (dismissing counter-claim alleging fraud);

Browning v. Prostok, 165 S.W.3d 336, 341 (Tex. 2005) (dismissing complaint alleging

---

[2]    The question of whether substantial grounds for a difference of opinion exist is not limited to "where
there is a divergence of opinion within a district, or where there is a Circuit split" as Plaintiffs claim.
Pl. Mem. at 9.  See In re Sandenhill, Inc., 304 B.R. 692, 694 (E.D. Pa. 2004) (finding a substantial
difference of opinion where no other court in the Third Circuit had decided the issue); In re Marvel
Entm't Group, Inc., 209 B.R. 832, 837 (D. Del. 1997) (finding a substantial difference of opinion
where "the bankruptcy court's decision is contrary to well-established law . . . ."); In re Grouphealth
Partnership, Inc., Misc. No. 92-0124, 1992 WL 96333, at *2 (E.D. Pa. Apr. 21, 1992) (finding a
substantial difference of opinion where "there is a split among courts in different circuits").

"breach of fiduciary duties, fraud and constructive fraud, and civil conspiracy").[3]  In each

of these cases, the court rejected plaintiffs' characterization of their claims against <u>non-

debtor</u> third parties as independent damages actions and dismissed them as untimely <u>de

facto</u> attempts to revoke a Plan and reallocate distributions thereunder in violation of

§ 1144.  Each of these cases reached a result contrary to the December 13 Order.[4]

      Plaintiffs attempt to distinguish <u>Public Service</u> on the basis that it involved an

injunction and "had nothing to do with the scope or application of § 1144 to independent

damage actions."  Pl. Mem. at 15.  But the claims in <u>Public Service,</u> just like the claims in

the instant case, sought damages based on allegations of fraud in what was purportedly an

independent damages action; and the Bankruptcy Court, in enjoining the action,

nonetheless held that § 1144 was one of the "pertinent provisions of the Bankruptcy Code

bearing upon decision in this matter" and found that the injunction was "warranted on the

facts of this case to effectuate the policies of finality underlying reorganization

proceedings under chapter 11 of the Bankruptcy Code."[5]  <u>In re Public Service Co. of New</u>

---

[3]    <u>See also</u> <u>In re Crown-Globe</u>, 107 B.R. 60, 62 (Bankr. E.D. Pa. 1989) (dismissing claim for equitable subordination).  As we state in our moving brief, there is no indication in <u>Crown-Globe</u> that a § 1144 argument was made with respect to the surviving fraud claim.  Def. Mem. at 16 n.9.  Plaintiffs do not respond to this point.

[4]    Plaintiffs argue that they are not trying to alter the Plan distributions because any damages award would not affect "anyone other than the parties to this action themselves."  Pl. Mem. at 10.  The same argument -- that not all creditors would be impaired by a judgment -- could have been made by the plaintiffs in all of the cases we cite -- none of those plaintiffs sued all of the participants in the underlying bankruptcy proceeding, but only a select few that they claimed to be "wrongdoers."  Moreover, Plaintiffs' claim that only a limited universe of creditors would be impacted by this action is misleading.  The 275 Plaintiffs in this action collectively held $205 million in subordinated debentures, or "over 55% of all the debentures outstanding."  Compl. ¶ 13.  Likewise, the Defendants are alleged to have held a vast majority of the senior debt.  Plaintiffs allege that by the time the Plan was confirmed, the Senior Lenders "had acquired over 75% of the senior debt participations . . . ."  Compl. ¶ 1.

[5]    Although our briefs in the Bankruptcy Court contained extensive discussion of <u>Public Service</u> (<u>see</u> Def. Joint Mem. of Law in Support of Motion to Dismiss Pl. Compl. at 21-22; Def. Joint Reply in Support of Motion to Dismiss Pl. Compl. at 5), the Bankruptcy Court did not discuss <u>Public Service</u> at all in its opinion on remand.

Hampshire, 148 B.R. 702, 709-10, 720-21 (Bankr. D.N.H. 1992). The First Circuit then affirmed, emphasizing the substantial policy reasons which support finality and that underlie § 1144. See Def. Mem. at 13-14.

Plaintiffs attempt to distinguish Hotel Corp. on the basis that the specific claims at issue had already been litigated in the bankruptcy proceeding. Pl. Mem. at 16. But the court's decision was not based on what contentions were presented in the bankruptcy proceeding. The District Court, in a ruling affirmed by the Fifth Circuit, held squarely that § 1144 barred plaintiffs' fraud-based claims for damages because allowing those claims would "allow [Plaintiffs] to do indirectly what they no longer may do directly because of 11 U.S.C. § 1144." Hotel Corp., 46 B.R. at 770-71.

Plaintiffs try to distinguish Browning by relying on the Bankruptcy Court's misreading of the case.[6] The Bankruptcy Court stated that the fraud alleged by Plaintiffs, unlike the fraud alleged in Browning, "was not -- and could not have been -- actually adjudicated" in the bankruptcy proceeding. December 13 Opinion at 13. However, the Browning plaintiffs, like Plaintiffs here, did assert that their claims of fraud were based on matters allegedly concealed during the confirmation process -- specifically, the existence of a secret plan to dramatically reduce operating expenses. Browning, 165 S.W.3d at 341-42, 350; Def. Mem. at 15-16. The Texas Supreme Court did not find that the alleged secret plan was known or knowable to plaintiffs during the bankruptcy or the

---

[6]    In doing so, Plaintiffs mischaracterize the Bankruptcy Court's opinion itself. Plaintiffs attribute to Judge Walsh the statement that the Texas Supreme Court "was not considering § 1144 . . . " Pl. Mem. at 14. What Judge Walsh actually stated was that "the Browning court explained that a claim fails under § 1144 if it would violate established finality doctrines or constitute an impermissible attack on the confirmation order" and that the Browning court then discussed whether such a collateral attack had been made. December 13 Opinion at 12. Plaintiffs' statement that Browning "had nothing to with § 1144" is also inexplicable. The Texas Supreme Court undertook a detailed analysis of § 1144 that spanned eight pages of the published opinion, and § 1144 was the entire basis of the result reached in the case. See 165 S.W.3d at 344-351.

180-day period which followed it.  Rather, its dismissal of the case was based entirely on the fact that although the complaint was couched as a damages action, the plaintiffs were claiming that they "received less than what they would have received had the estate been properly valued." 165 S.W.3d at 346.  The court stated "while [the plaintiffs'] action contemplates relief other than revoking the confirmation order, it necessarily challenges the integrity of the order and results in a review, perhaps a recalculation, of the bankruptcy determinations of the assets to which some claimants are entitled." Id. at 346-47.  Thus, Plaintiffs' theory here is indistinguishable from Browning.

Clearly, none of these three courts -- the First Circuit, the Fifth Circuit, and the Texas Supreme Court -- would have allowed Plaintiffs' claims in this action to survive.

Plaintiffs cite other cases, principally a Bankruptcy Court case and two District Court cases outside this District and this Circuit -- In re Circle K Corp., 181 B.R. 457 (Bankr. D. Ariz. 1995), In re Emmer Bros. Co., 52 B.R. 385 (D. Minn. 1985), and In re Coffee Cupboard, Inc., 119 B.R. 14 (E.D.N.Y. 1990) -- which, they claim, hold that § 1144 does not apply to damages cases such as this one.  Even if these cases could be read as broadly as Plaintiffs contend (and which we dispute) -- they cannot possibly lead to the conclusion that the December 13 Opinion does not present "substantial grounds for a difference of opinion" in light of the three appellate cases discussed above, including the two decided by federal Courts of Appeals, that are to the contrary.

What is more, the cases Plaintiffs cite do not even support the propositions for which they are cited.

Although Plaintiffs argue that Circle K supports the December 13 Opinion, the action in Circle K was initially filed within the 180-day period as an application to revoke

the plan. In re Circle K, 171 B.R. 666, 668 (Bankr. D. Ariz. 1994).[7] Therefore it does

not implicate the 180-day period of § 1144 or otherwise have any application to an action

like this one, which was filed over two years after confirmation.

In re Emmer Bros. Co., 52 B.R. 385 (D. Minn. 1985) allowed a claim to proceed

where plaintiff alleged that defendant wrongfully concealed an interest in a class action

lawsuit from the Bankruptcy Court. The court found that § 1144 did not bar the claim

because it "involves a dispute about an additional asset that did not figure in to the

reorganization plan." Id. at 392. Similarly, in Coffee Cupboard, 119 B.R. at 16, the court

allowed the reopening of a chapter 11 case and its conversion to chapter 7 where the

debtor had concealed its ownership of 6,425,000 shares in a public corporation. These

"hidden asset" claims are nothing like the claims alleged by Plaintiffs here.[8]

The other cases cited by Plaintiffs are completely inapposite. Donaldson v.

Bernstein, 104 F.3d 547 (3d Cir. 1997) had nothing to do with the correctness of matters

determined by a confirmed plan of reorganization, but was a suit by a trustee against the

debtors' two principals claiming the defendants failed to comply with a bankruptcy plan.

Id. at 555. A.B.H. Investments, Inc. v. Narven Enters. Inc., 2003 Cal. App. Unpub.

LEXIS 11126 (Cal. Ct. App. Nov. 25, 2003) involved claims that the defendants

misrepresented the amount of money needed to fund the bankruptcy reorganization so

that they could become the enterprise's sole owners. These misrepresentations were

made outside of the bankruptcy proceedings and did not relate to matters determined in

---

[7]  The damages claim came in by a later amendment to the complaint and was based on the identical facts as the original complaint. Presumably, that amendment would relate back to the original filing date, pursuant to Fed. R. Civ. P. 15(c) and Fed. R. Bankr. P. 7015(c).

[8]  Plaintiffs do not allege that any asset was "hidden" in the Genesis bankruptcy proceedings. Their allegations are all based on the claim that Genesis was undervalued.

the plan of reorganization. In <u>Williams v. Texaco</u>, 165 B.R. 662 (D.N.M. 1994),

plaintiffs alleged that their claims had not been discharged because they had no notice of

the bankruptcy. <u>Id</u>. at 672. The court held that plaintiffs were entitled to discovery

because their claims of lack of notice, if true, would not upset the Plan. <u>Id</u>. at 672 n.3.

None of the cases cited by Plaintiffs supports their <u>ipse</u> <u>dixit</u> proposition that the

bankruptcy "'pie' is being redivided only when *specific assets that were distributed*

*pursuant to the plan* are being redistributed or will otherwise be affected by a subsequent

award of damages." Pl. Mem. at 12 (emphasis in original).[9]

Beyond their attempt to align the foregoing cases with the December 13 Opinion,

Plaintiffs proffer three additional arguments, none of which withstands analysis.

First, Plaintiffs argue that it is the "law of the case" that their claims represent an

independent action that does not alter the distributions under the Plan. Pl. Mem. at 13.

This argument is directly contradicted by the record. Judge Wizmur dismissed Plaintiffs'

claims against Genesis under § 1144 and never addressed whether § 1144 barred those

same claims against the non-debtor Defendants. <u>In re Genesis Health Ventures, Inc.</u>, 324

B.R. 510, 517 (Bankr. D. Del. 2005). On appeal, Judge Jordan affirmed Judge Wizmur's

ruling dismissing the claim as to Genesis, holding that "creditors may not attack

confirmation orders by simply characterizing their attempt as an independent cause of

action, rather than a motion to revoke the order . . . ." <u>In re Genesis Health Ventures,</u>

<u>Inc.</u>, 340 B.R. 729, 733 (D. Del. 2006). He explicitly stated that "the Bankruptcy Court

did not address whether the time bar of § 1144 should also apply to bar claims against

Goldman, Mellon, Highland and Hager. Therefore I remand for a determination of

---

[9]    Any such proposition would be squarely contradicted by <u>Public Service</u>, <u>Hotel Corp.</u>, and <u>Browning</u>, all of which dismissed claims for damages that did not seek to redistribute specific assets.

whether that provision applies to the claims against those Defendants." Id. at 733. As if that were not enough, Judge Jordan emphasized at the end of his opinion, "this case will be remanded for further proceedings consistent with this opinion, including consideration of whether § 1144 bars relief against all Defendants." Id. at 734-35.

Second, Plaintiffs argue (citing the December 13 Opinion) that § 1144 protects only "innocent parties".[10] Pl. Mem. at 13. But § 1144 contains no such limitation and such a limitation would effectively vitiate § 1144 since the claims it precludes by their very nature allege fraud and lack of "innocence". Its very purpose is to assure that after the expiration of the 180-day period, principles of finality and certainty prevail and that the confirmed plan remains unaltered regardless of any such allegations. See 8 COLLIER ON BANKRUPTCY ¶ 1144.04 [02], at 1144-7 (15th ed. rev. 2006) (quoted in Def. Mem. at 12).[11] Otherwise every bankruptcy plan would be subject to potential never-ending relitigation among claimants.

Finally, Plaintiffs proffer a "this simply cannot be so" argument. They ignore the precedents, and say that if § 1144 bars their claims, "*any* damage claim against a creditor" would be barred. Pl. Mem. at 14 (emphasis in original). This is clearly not the case. Fraud-based claims that seek to revoke a plan can be brought within the 180-day period authorized by § 1144. See Circle K, 171 B.R. at 668. Likewise, as is discussed above, claims that do not involve assets adjudicated under the plan can be brought

---

[10]   Presumably, Plaintiffs would define "innocent parties" as the bankruptcy participants that Plaintiffs have chosen not to sue. But innocence can only be determined at the conclusion of a litigation. The principles of § 1144, *res judicata*, and collateral estoppel are meant to prevent a second litigation, and would be rendered meaningless if they could be said to apply only after an accused creditor established its "innocence".

[11]   Plaintiffs cite a separate quotation from COLLIER completely out of context. Pl. Mem. at 12. In the portion of the text they cite, the treatise was only echoing phrases from cases cited by Plaintiffs, which we distinguish here.

without violating § 1144.  See Coffee Cupboard, 119 B.R. at 16; Emmer Bros., 52 B.R. at

392.  Nor does § 1144 bar claims unrelated to matters addressed by the confirmation

order.  See Donaldson, 104 F.3d at 555.

     In short, the December 13 Order is in conflict with existing case law and the

fundamental purpose of § 1144.  Without question, "substantial grounds for a difference

of opinion" exist.

     **B.**    **This Dispute Involves A Controlling Question of Law**

     Plaintiffs argue that the application of § 1144 is a mixed question of law and fact,

and that a controlling issue of law can only be shown if there is a "pure question of law."

This argument mistakes the legal standard and mischaracterizes the issue presented here.

     A controlling question of law is an issue that "would result in a reversal of a

judgment after final hearing . . . ."  Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d

Cir. 1974); Sandenhill, 304 B.R. at 694 (same); Marvel Entm't Group, 209 B.R. at 837

(same).  Here, the standard is clearly met since a successful appeal would be dispositive

of Plaintiffs' claims.

     Plaintiffs do not explain why the § 1144 issue is a "mixed" question of law and

fact.  The issue presented here is addressed solely to the legal viability of the Complaint,

without any need to refer to external, disputed facts, just as was the case when the

Bankruptcy Court and this Court dismissed the claims against Genesis.  To determine

whether Plaintiffs' claims are barred by § 1144, the Court need only consider Plaintiffs'

own allegations on their face, that (i) they should have received more and the Senior

Lenders less in the bankruptcy and (ii) that the enterprise value of Genesis should have

been different than what was determined in the confirmed Plan.  Courts have routinely

held that a controlling question of law exists where the question is whether the lower

DEL1 65651-1

court "correctly applied the law to determine that certain matters were barred." Bradburn
Parent Teacher Store, Inc. v. 3M, No. Civ. A. 02-7676, 2005 WL 1819969, at *3 (E.D.
Pa. Aug. 2, 2005) (certifying collateral estoppel issue for interlocutory appeal) (citing
Witowski v. Welch, 173 F.3d 192 (3d Cir. 1999)); see also In re Bertoli, 58 B.R. 992, 995
(D.N.J. 1986) (allowing interlocutory appeal and reversing Bankruptcy Court's denial of
motion to dismiss on *res judicata* grounds), aff'd, 812 F.2d 136 (3d Cir. 1987).

        The cases cited by Plaintiffs are inapposite.  In Steel Partners II, L.P. v. Aronson,
No. 05-CV-1983, 2006 U.S. Dist. LEXIS 92772, at *5 (D.N.J. Dec. 22, 2006), the
District Court denied leave to appeal a denial of summary judgment that involved a fact-
sensitive inquiry as to whether the statute of limitations had been tolled based on whether
a share purchase agreement was a new agreement or a continuation of a previous
agreement.  The District Court held that there was no substantial dispute as to the correct
legal standard to be applied.  Id. at *7-8; see also Amkor Tech., Inc. v. Alcatel Bus. Sys.,
No. 02-3156, 2003 U.S. Dist. LEXIS 23703, at *3 (E.D. Pa. Dec. 29, 2003) (denying
leave to appeal motion to dismiss based on lack of personal jurisdiction where there was
no dispute as to the controlling legal principles).

        **C.      Consideration of These Issues Now Could Advance
                the Ultimate Termination of This Litigation By Years**

        Plaintiffs concede the obvious:  that if this Court were to accept an interlocutory
appeal now and dismiss the entire case, it "might hasten the end" of the case. Pl. Mem. at
18.  That is the only showing that is required under this element.  See Sandenhill, 304
B.R. at 695 (finding the termination of the litigation would be advanced where, "if the
order allowing the [avoidance] action to proceed were reversed, the action would
terminate and the underlying bankruptcy matter would again close."); In re Bertoli, 58

DEL1 65651-1

B.R. at 994 ("[R]esolution of the matter at this juncture certainly has the capacity to advance the litigation since one of the court's alternative dispositions will lead to dismissal of the entire action.").

Plaintiffs argue, however, that an interlocutory appeal would waste "additional months or more" if the appeal is unsuccessful. Pl. Mem. at 18. Obviously, that possibility exists with any interlocutory appeal; and Plaintiffs' argument, if accepted, would therefore preclude all such appeals. That, of course, is not the test, particularly since interlocutory appeals are premised on the existence of substantial grounds for a difference of opinion as to the correctness of the appealed order.

More importantly, the expenditure of the time necessary to process an appeal pales in comparison to the years it will take and significant costs that will be incurred if this action is litigated through trial. A trial would involve a relitigation of the entire Genesis Plan confirmation proceeding, in addition to the detailed exploration of the contacts among the various parties during the bankruptcy case (during which Plaintiffs allege that these parties entered into a conspiracy to defraud), notwithstanding the ever-present possibility that the appellate courts would ultimately hold that Plaintiffs' claims were barred as a matter of law. See Def. Mem. at 17-19.

Furthermore, Plaintiffs' argument utterly ignores the special risk, based on Plaintiffs' own announced intentions, of multiple trials of this action. Plaintiffs have stated their intention to appeal the dismissal of the Debtor from the case "at the appropriate time," i.e., upon final judgment. See Pl. Mem. on Remand of Mot. to Dismiss ("Pl. Mem. on Remand"), at 6 n.4. Thus, if the case now proceeds to trial and Plaintiffs fail to prove misconduct on the part of the non-Debtor Defendants, there would

-12-

still be an open issue as to whether the prior dismissal as to the Debtor under § 1144 was correct. If Plaintiffs' position on that issue is sustained, another trial would potentially be necessary to determine whether the Debtor acted wrongfully. By contrast, if this Court grants leave to appeal now and determines that § 1144 bars Plaintiffs' claims, that determination would result in a final judgment dismissing the Complaint in its entirety. Plaintiffs would then be able to appeal, as of right, the full dismissal of the entire action to the Third Circuit.

Finally, Plaintiffs proffer a straw man, arguing that an interlocutory appeal will delay discovery and trial. Pl. Mem. at 18. But the grant of leave to appeal would not in and of itself stay all other proceedings in this action. A stay would be eminently logical while an appeal was pending, but whether, and the extent to which, pretrial proceedings should be stayed pending appeal is in the discretion of the Bankruptcy Court. Plaintiffs can address their concerns, as we would ours, in connection with any such application for a stay. Plaintiffs point to no case that has denied leave to appeal on this ground.

## II.    IF LEAVE IS GRANTED, THE DISTRICT COURT SHOULD CONSIDER ALL ISSUES RAISED BY THE DECEMBER 13 ORDER

Citing no precedent, Plaintiffs suggest that this Court should not consider the additional grounds for dismissal determined by the December 13 Order because they are "routine issues" and are not "substantial." Pl. Mem. at 19.

The Third Circuit has held that on an interlocutory appeal the appellate court considers "all grounds which might require a reversal of the order appealed from . . . [R]esolving some of the questions now while reserving the others until after final judgment would be neither practicable nor desirable." In re School Asbestos Lit., 789 F.2d 996, 1002 (3d Cir. 1986); see also Calhoun v. Yamaha Motor Corp., U.S.A., 40 F.3d

622, 626 (3d Cir. 1994) (reviewing court "decides an appeal from an interlocutory order

. . . and may address any issue that is necessary to decide the appeal before [it].");

Johnson v. Alldredge, 488 F.2d 820, 822-23 (3d Cir. 1973) (same); 19 JAMES W. MOORE,

MOORE'S FEDERAL PRACTICE § 203.32[3][a] (3d. ed. 1997 & Supp. 2006) ("The

controlling question is the reason for the interlocutory appeal, but the thing under review

is the order.")

In this case, consideration of the other grounds for dismissal is particularly

justified.  Not only do they present independent grounds for dismissal, but the

Bankruptcy Court's decisions on *res judicata* and collateral estoppel, by themselves,

meet all the standards for an interlocutory appeal.[12]

**The ruling that a "fraud exception" applies here can be reviewed and should**

**be reversed.**  Recognizing that without a general fraud exception, the Complaint is

indisputably barred under principles of *res judicata* and collateral estoppel, Plaintiffs

state that both Judge Wizmur and Judge Jordan held that a "fraud exception" to *res*

*judicata* applies to their claims and that its applicability "has already been established as

law of the case."  Pl. Mem. at 20.

First, this contention is simply contrary to the record.  Judge Wizmur did not rule

that a "fraud exception" applied on the original motion to dismiss.  Rather, Judge Wizmur

characterized it as the "so-called fraud exception" and simply ruled that if available, it did

not apply to the claims here.  324 B.R. at 525-26.[13]  Likewise, the District Court, in

---

[12]     In footnote 2 of their Opposition, Plaintiffs state that Defendants have not appealed a ruling by the
Bankruptcy Court that "certain factual allegations are not barred by the doctrines of *res judicata* and
collateral estoppel."  This statement is neither elaborated on by them nor understood by us.

[13]     Contrary to Plaintiffs' claim (Pl. Mem. at 21), we explicitly challenged the existence of the "so-called
fraud exception" on the original motion to dismiss and on their appeal from that dismissal.  See Def.
Joint Reply to Pl. Opp. to Motion to Dismiss Pl. Compl. at 10 n.5, 21-22; Brief of Defendant-

DEL1 65651-1

vacating the Bankruptcy Court's dismissal of the claims against the non-debtor

Defendants, held only that the Bankruptcy Court had failed to consider certain

allegations, remanded "for the Bankruptcy Court to consider the motion to dismiss in

light of all of the allegations in the Complaint," and made no ruling whatsoever on

whether a "fraud exception" did or did not apply. Genesis Health Ventures, 340 B.R. at

734 (Jordan, D.J.). It is only in the December 13 Opinion that the Bankruptcy Court

held, for the first time in this case, that there is a "fraud exception" in the bankruptcy

context to the principles of res judicata, and on that basis allowed four of the allegations,

on which Plaintiffs' claims are based, to survive.[14]  December 13 Opinion at 32.

Additionally, Plaintiffs' new "law of the case" argument is contrary to their

previous position, advanced before Judge Walsh on remand, that the District Court

"vacated all of Judge Wizmur's determinations on res judicata and collateral estoppel,

and none of them can be considered to be law of the case." Pl. Mem. on Remand at 37.

Second, Plaintiffs argue that we are advocating a "new rule" that abolishes the

"fraud exception" to res judicata. Pl. Mem. at 22.  But it is Plaintiffs who are advocating

a "new rule" -- or to put it a different way, they are advocating disregard of the present

---

Appellees in Opp. to the Appeal of Richard Haskell at 34.  In any event, Judge Walsh reached and
decided the "fraud exception" issue in his opinion. December 13 Opinion at 31-33.

[14]  Plaintiffs' Statement of Facts refers to additional claims, previously raised by Plaintiffs, that Genesis
"Improperly included in EBITDA various non-recurring costs, such as costs associated with the
bankruptcy reorganization and costs associated with a terminated insurance plan." Pl. Mem. at 6.
These claims were dismissed in the December 13 Order. December 13 Opinion at 31-32. Plaintiffs
have not sought leave to appeal the dismissal of these claims. In another portion of their brief,
Plaintiffs state that if this Court "accepts an appeal" of the various issues raised in our motion for
leave to appeal, they would seek leave to cross-appeal the Bankruptcy Court's decision on unspecified
"other issues," presumably these dismissed claims. Pl. Mem. at 19 n.9. However, Plaintiffs' time to
seek such leave to appeal has long since passed. See Fed. R. Bankr. P. 8002.

DEL1 65651-1

rules.[15]  Fed. R. Bankr. P. 9024 restricts a party's ability to vacate a confirmation order

on traditional Fed. R. Civ. P. 60(b) grounds -- which include allegations based on fraud --

to the 180-day period established by Section 1144.  Section 1144 and Rule 9024 cannot

be reconciled with the existence after such period of a "fraud exception" to *res judicata*.

If there were such a "fraud exception" these provisions would be devoid of any practical

effect because even after the lapse of 180 days, the provisions of the Plan would be given

no *res judicata* effect if fraud was established. This squarely contradicts all principles of

finality, and is also directly contrary to § 1141(a) of the Bankruptcy Code:

> the provisions of a confirmed plan bind . . . any creditor,
> equity security holder, or general partner in the debtor,
> whether or not the claim or interest of such creditor, equity
> security holder, or general partner is impaired under the
> plan and whether or not such creditor, equity security
> holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).  In this section, Congress made explicit that a confirmed Plan binds

every creditor, whether or not the creditor accepted the Plan.  It simply does not matter

what objections, if any, a particular creditor raised to the Plan.[16]

**Plaintiffs misapprehend *res judicata* and ignore collateral estoppel.**  In an

effort to further buttress their argument that there is a "fraud exception," Plaintiffs claim

---

[15]  Neither of the cases cited by Plaintiffs apply a "fraud exception" to res judicata in the context of a confirmation order.  See In re PHP Healthcare Corp., No. 98-2608, 2002 WL 923932, at *1 (Bankr. D. Del. May 7, 2002) (allowing plaintiffs' claim to avoid and recover professional fees awarded during the bankruptcy as a preferential transfer); Aboudaram, S.A. v. De Groote, No. 02-3156, 2006 U.S. Dist. LEXIS 26161 at *14 (D.D.C. May 4, 2006) (proof of claim filed in a bankruptcy was barred by the *res judicata* effect of a prior District Court judgment on the same claim).

[16]  Plaintiffs cite Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330 (3d Cir. 2000) for the broad proposition that *res judicata* must be narrowly applied in the bankruptcy context. Pl. Mem. at 22. Eastern Minerals does not address the "so-called fraud exception". There, the Third Circuit held that *res judicata* "must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case." Id. at 337.  This is due to the fact that in a single bankruptcy case, numerous issues (some tangential, some central) may be raised by numerous parties in interest (some parties with peripheral interests, some with substantial interests) at various times with varying impacts on the estate and proceedings.

-16-

DEL1 65651-1

that principles of *res judicata* apply only "to claims that actually were or *could have been* litigated in the prior proceeding." Pl. Mem. at 22 (emphasis in original). They then argue that matters that were concealed cannot be deemed to be matters that "could have been litigated." They are wrong in every aspect of this argument. *Res judicata* is not dependent on the matters litigated; it focuses instead on claims. All claims that have been or could have been determined are forever barred unless the underlying judgment is vacated.[17]

> When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain second action in which he tenders the other theory or ground.

Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 550 (3d Cir. 2006) (citing Restatement (Second) of Judgments § 25 cmt. e (1982)) This is the case irrespective of whether new facts are subsequently discovered. See, e.g., Churchill v. Star Enterprises, 183 F.3d 184, 195 (3d Cir. 1999) (action barred by *res judicata*, rejecting argument that "new material facts" were presented for the first time in the second litigation).

Collateral estoppel also bars Plaintiffs' claims. Plaintiffs' response to our collateral estoppel argument is to ignore it.[18] To the extent that Plaintiffs contend in the *res judicata* context that they did not have the opportunity to raise particular arguments and introduce certain evidence during the bankruptcy proceedings, their contentions are

---

[17]    A bankruptcy case is "an *in rem* proceeding." 1-3 COLLIER ON BANKRUPTCY § 3.01[4][a]. In concept it is similar to a partition action dividing interest in real property -- at the conclusion of the action, all claims concerning who gets what have been determined by the Plan. No subsequent action can alter the Plan distributions without ignoring the *res judicata* effect of the confirmation order.

[18]    Likewise, the Bankruptcy Court's December 13 Opinion did not address the subject of collateral estoppel, which was a separate basis for the motion to dismiss.

DEL1 65651-1

no answer to collateral estoppel.  Collateral estoppel does not depend on whether particular arguments or lines of evidence were presented; it applies to fact issues.  The relevant fact issue is the enterprise value of Genesis.  This issue was heavily litigated, determined by a valid and final judgment, and that determination was essential to the judgment.[19]  Yamaha Corp. v. United States, 961 F.2d 245, 257-58 (D.C. Cir. 1992) ("A new contention is not . . . necessarily a new issue.  If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.") (emphasis in original) (internal citations omitted).

**Rule 9(b) requires dismissal of Plaintiffs' fraud claims.**  Plaintiffs characterize our Rule 9(b) arguments as "run of the mill" but cite no legal basis that should prevent this Court from considering them should this motion be granted.  We demonstrated that Plaintiffs' allegations do not state a claim for fraud because they:  (i) fail to state with specificity each Defendant's role in the alleged fraud; (ii) lack any fact-based allegations that demonstrate the falsity of the challenged projections, estimates and budgets at the time they were made;[20] (iii) allege scienter based on allegations that the Defendants had a motive and opportunity to acquire a monetary gain in the ordinary course of business; and (iv) fail to allege facts showing justifiable reliance.  See Def. Mem. at 21.

---

[19]    In our moving brief, we also argued that the December 13 Opinion was erroneous because the four EBITDA issues that survived the motion to dismiss were actually litigated in the bankruptcy proceedings.  Def. Mem. at 20.  Plaintiffs do not respond to this point.

[20]    Plaintiffs state as a fact -- but without any citation or support -- that we have conceded that "Genesis' results for the Valuation Period were grossly understated."  Pl. Mem. at 5.  This statement is false.

DEL1 65651-1

We also pointed out that in finding that scienter was adequately alleged based on the Senior Lenders' motive to "make a high return" on their investment (December 13 Opinion at 44) and management's motive to secure a "lucrative compensation package" and retain its position (id. at 43, quoting Compl. ¶ 160), the Bankruptcy Court has made all creditors and all members of management vulnerable to fraud claims, and thereby has vitiated the gatekeeper function of Rule 9(b).[21]

Plaintiffs do not address our arguments at all. Their only response is to regurgitate a summary of the allegations in their Complaint.[22]

**Plaintiffs' gross negligence claim is legally insufficient.** Plaintiffs' reliance on § 552 of the Restatement (Second) of Torts is wholly misplaced.[23] Section 552 addresses the situation where a party negligently "supplies false information for the guidance of others in their business transactions." But because Plaintiffs and the Senior Lenders were adversaries, Plaintiffs cannot possibly claim that they relied on information provided by the Senior Lenders in the bankruptcy proceedings. See CIGNA v. Alexander, 991 F. Supp. 427, 440 n.21 (D.N.J. 1998) (rejecting claim for negligent misrepresentation between adverse parties in a commercial transaction), aff'd, 172 F.3d 859 (3d Cir. 1998); Smolensky v. McDaniel, 144 F. Supp.2d 611, 621 (E.D. La. 2001) (negligent misrepresentation claim by employee against employer does not lie where claim was based on employer's letter to the EEOC). Nor is this case analogous to the situation in

---

[21] We also pointed out the inconsistency of the Bankruptcy Court's failure to dismiss the claims against Mellon with its observation that "the Complaint does not provide details as to Mellon's motive." December 13 Opinion at 46 n.13. Mellon is filing a supplemental brief regarding this issue.

[22] Plaintiffs also do not address our argument that their conspiracy claim fails if their fraud claim fails.

[23] Significantly, the Bankruptcy Court placed no reliance whatsoever on § 552. It rested its refusal to dismiss the gross negligence claim on dicta in a decision of a Bankruptcy Court in another district and circuit, ignoring existing Third Circuit precedent dealing with claims of negligence brought by one creditor against another. See Def. Mem. at 22.

DEL1 65651-1

Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 605 N.E.2d 318

(N.Y. 1992), cited by Plaintiffs, where the court found a lawyer may be held liable for

negligence in providing an opinion letter to a third party during the course of a

transaction.  Indeed, Plaintiffs vigorously litigated and affirmatively challenged the

enterprise valuation proposed by the Senior Lenders.

Perhaps most significantly, Plaintiffs do not even attempt to offer a reason why,

even if their much proclaimed (but ill-supported) assertion of a "fraud exception" to res

judicata and collateral estoppel were well founded, such a "fraud exception" would also

allow for a claim for gross negligence.  Gross negligence is not fraud.  Allowing a gross

negligence claim, which would call into question the allocations to creditors pursuant to

the Plan as well as the underlying finding of enterprise value, would clearly be contrary

to res judicata and collateral estoppel.  Plaintiffs have never argued that there is a

"negligence exception" to res judicata or collateral estoppel; and they present no basis

whatsoever to support it here.

## CONCLUSION

For all the foregoing reasons, and the reasons set forth in our moving brief, good

cause exists for granting immediate leave to appeal the December 13 Order, and we

respectfully request that such leave be granted.

Dated:    February 6, 2007
          Wilmington, Delaware

Robert S. Brady /w/perm.
(SKK 3/06)

Robert S. Brady (2847)
YOUNG CONAWAY STARGATT
 & TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6690

Steven K. Kortanek

Steven K. Kortanek (3106)
Morton R. Branzburg
KLEHR, HARRISON, HARVEY,
 BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19809-3062
(302) 426-1189

DEL1 65651-1

- and -

Paul V. Shaloub
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant
George V. Hager

- and -

Sheldon Raab
Eric A. Hirsch
Sabita Krishnan
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Attorneys for Defendant
Goldman, Sachs & Co.

*Daniel K. Hogan /w/perm.*
*SKC 3/06)*

Daniel K. Hogan (2814)
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, Delaware 19806
(302) 656-7540

- and -

Paul Lackey
Michael Aigen
LACKEY, HERSHMAN LLP
3102 Oak Lawn Ave., Suite 700
Dallas, Texas 75219
(214) 560-2206

Attorneys for Defendant
Highland Capital Management, L.P.

*Theresa KD Currier (by perm. see 3/06)*

Teresa K. D. Currier (3080)
Peter J. Duhig (4024)
BUCHANAN INGERSOLL
  & ROONEY, P.C
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware  19801
(302) 552-4200

- and -

Steven Russo
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York  10022
(212) 421-2150

Attorneys for Defendant Mellon
Bank, N.A. with respect to plaintiffs
Charles L. Grimes, Louis IG Ireland
Trust, C. Yvonne Cooke,
Jane G. Brown, Serena R. Schwartz and
Gordon W. Chaplin

Menachem O. Zelmanovitz
Matthew W. Olsen
James L. Baribeau
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
(212) 309-6000

Attorneys for Defendant Mellon Bank, N.A.
with respect to all Plaintiffs other than
Charles L. Grimes, Louise IG Ireland Trust,
C. Yvonne Cooke, Jane G. Brown,
Serena R. Schwartz and Gordon W. Chaplin

Attorneys for Defendant Mellon Bank, N.A.

544509

DEL1 65651-1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

GENESIS HEALTH VENTURES, INC.,
  *et al.*,

                    Debtors,

Case No. 00-2692 (PJW)
Jointly Administered

RICHARD HASKELL, *et al.*,

                    Plaintiffs.

          v.

GOLDMAN, SACHS & CO., *et al.*,

                    Defendants.

Adv. Pro. No.: 04-53375 (PJW)

## COMPENDIUM OF UNREPORTED CASES

A.B.H. Investments, Inc. v. Narven Enters. Inc.,
  2003 Cal. App. Unpub. LEXIS 11126 (Cal. Ct. App. Nov. 25, 2003) .....................................A

Aboudaram, S.A. v. De Groote,
  No. 05-988, 2006 U.S. Dist. LEXIS 26161 (D.D.C. May 4, 2006) .........................................B

Amkor Tech., Inc. v. Alcatel Bus. Sys.,
  No. 02-3156, 2003 U.S. Dist. LEXIS 23703 (E.D. Pa Dec. 29, 2003) ....................................C

Bradburn Parent Teacher Store, Inc. v. 3M,
  No. Civ. A. 02-7676, 2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) ..........................................D

In re Grouphealth Partnership, Inc.,
  Misc. No. 92-0124, 1992 WL 96333 (E.D. Pa. Apr. 21, 1992) ...............................................E

In re PHP Healthcare Corp.,
  No. 98-2608, 2002 WL 923932 (Bankr. D. Del. May 7, 2002) ...............................................F

Steel Partners II, L.P. v. Aronson,
  No. 05-CV-1983, 2006 U.S. Dist. LEXIS 92772 (D.N.J. Dec. 22, 2006) ...............................G

# A

4 of 4 DOCUMENTS



Warning
As of: Feb 05, 2007

**A.B.H. INVESTMENTS, INC., et al., Plaintiffs and Appellants, v. NARVEN
ENTERPRISES, INC., et al., Defendants and Respondents.**

**D040361**

**COURT OF APPEAL OF CALIFORNIA, FOURTH APPELLATE DISTRICT,
DIVISION ONE**

*2003 Cal. App. Unpub. LEXIS 11126*

**November 25, 2003, Filed**

**NOTICE:** [*1]    NOT TO BE PUBLISHED IN
OFFICIAL REPORTS CALIFORNIA RULES OF
COURT, RULE 977(a), PROHIBITS COURTS AND
PARTIES FROM CITING OR RELYING ON
OPINIONS NOT CERTIFIED FOR PUBLICATION
OR ORDERED PUBLISHED, EXCEPT AS
SPECIFIED BY RULE 977(B). THIS OPINION HAS
NOT BEEN CERTIFIED FOR PUBLICATION OR
ORDERED PUBLISHED FOR THE PURPOSES OF
RULE 977.

**PRIOR HISTORY:** APPEAL from judgments and an
order of the Superior Court of San Diego County, S.
Charles Wickersham, Judge. Super. Ct. No. GIC739587.

**DISPOSITION:** Affirmed in part; reversed in part.

**JUDGES:** MCINTYRE, J. WE CONCUR: HUFFMAN,
Acting P. J., NARES, J.

**OPINION BY:** MCINTYRE

**OPINION:** This action arises out of the bankruptcy re-
organization of the El Cortez Motel Limited Partnership
(the Partnership), pursuant to which plaintiffs A.B.H.
Investments, Inc. (A.B.H.) and Hassanali Dharani (to-
gether plaintiffs), as well as others, lost their interests in
the Partnership. Plaintiffs assert fraud and other claims
against Narven Enterprises, Inc. (the Partnership's man-
aging general partner (Narven)) and Behram Baxter (the
president and controlling shareholder of Narven (to-
gether defendants)) alleging defendants fraudulently pre-
vented them from participating in the bankruptcy reor-

ganization [*2] plan. They also sought declaratory relief
against defendants and BF Hospitality, L.P. (BF), the
entity that acquired title to the Partnership's assets after
confirmation of the bankruptcy reorganization plan.

The trial court granted summary judgment in favor of
defendants and BF, concluding the action would upset
the bankruptcy reorganization plan and was barred as a
matter of law. The trial court also concluded that the
applicable statute of limitations barred plaintiffs' claims
for breach of the partnership agreement, breach of fidu-
ciary duty and declaratory relief. Plaintiffs appeal, con-
tending the trial court erred in granting the motion be-
cause their damage claims would not upset the bank-
ruptcy reorganization plan and triable issues of material
fact precluded summary judgment on the statute of limi-
tations defense. Plaintiffs also appeal the trial court's
order denying their motion to vacate the judgment.

We reverse the judgment in favor of defendants because
triable issues of material fact exist as to their statute of
limitations defense and plaintiffs' claim for monetary
damages will not upset the bankruptcy plan. We con-
clude that summary adjudication is proper as to [*3] the
fourth cause of action for declaratory relief because the
remedies sought would upset the bankruptcy reorganiza-
tion plan, and thus we affirm the judgment in favor of
BF. Based on these conclusions, plaintiffs' remaining
claim that the trial court erred in denying their motion to
vacate the judgment is moot.

FACTUAL AND PROCEDURAL BACKGROUND

2003 Cal. App. Unpub. LEXIS 11126, *

*The Parties*

The Partnership, which was formed by the parties in December 1984, owned and operated a hotel in San Diego known as the Comfort Inn. A.B.H., a general and limited partner of the Partnership, was owned by Hassanali Dharani (a shareholder of A.B.H. and limited partner of the Partnership) and his brothers Amirali Dharani (an A.B.H. shareholder, director and its president) and Badruddin Dharani (a shareholder of A.B.H. and limited partner of the Partnership, now deceased; collectively the Dharani Family).

The Dharani Family has had a long-standing business relationship with Baxter beginning in the early 1980's when Baxter's management company, Tribax Management, Ltd. (Tribax), acted as the managing agent for the Dharani Family's Canadian corporations. These corporations merged into one corporation, Laswind, which owned [*4] a Canadian apartment building, known as 100 Spadina Road, jointly with Tribax. The 100 Spadina Road joint venture formed Timron Investments Ltd. (Timron) to hold title to the apartment building. Baxter, through Tribax, managed the joint venture and had complete authority over the bank accounts and business affairs for 100 Spadina Road/Timron. Baxter also managed all Laswind business affairs and had complete control over Laswind's bank accounts.

Baxter is also involved with the Dharani Family in a real estate investment known as the San Diego Farah Partners Limited Partnership (Farah Partners). In his capacity as the general partner for Farah Partners, Baxter sued A.B.H. and Amirali in 2000 seeking declaratory relief and damages for breach of fiduciary duty and conspiracy. In that action Laswind and 100 Spadina Road filed a complaint-in-intervention alleging Baxter fraudulently transferred Laswind funds to Farah Partners. This action is apparently still pending in superior court.

*The Bankruptcy*

In May 1994, the Partnership filed a chapter 11 voluntary petition for bankruptcy reorganization after its lender (the Lender), issued a Notice of Intent to Foreclose on the $ 2.2 [*5] million deed of trust against the hotel. The Comfort Inn franchisor (the Franchisor) also claimed that the Partnership was in default under the franchise agreement and threatened to terminate the franchise unless the Partnership made substantial capital improvements at the hotel.

In January 1995 the Partnership and the Lender entered into a Settlement Agreement whereby the Lender agreed to temporarily suspend its efforts to foreclose on the Comfort Inn and allow the Partnership time to pay off or restructure the mortgage. Plaintiffs learned of the bankruptcy filing via a letter dated February 14, 1995

(the February Letter) sent to A.B.H. from John Morrell, the Partnership's bankruptcy attorney. The February Letter informed plaintiffs of the bankruptcy and their need to invest new capital into the Partnership to avoid losing their partnership interests. The letter also informed plaintiffs that Baxter had settled his personal guaranty of the Partnership's obligations and no longer faced any personal exposure.

On February 17, 1995, Morrell served plaintiffs with a motion to approve the settlement agreement, describing the settlement and advising them to contact his office to receive [*6] any supporting documentation. The bankruptcy court approved the unopposed settlement agreement in March 1995, and in May 1995 the Partnership and the Lender entered into a "Forbearance and Discounted Payoff Agreement" (the Forbearance Agreement), whereby the Lender agreed to restructure the debt and forego foreclosure.

Later that month Morrell served on the plaintiffs a notice of intention to enter into the Forbearance Agreement. No party objected to the notice and the bankruptcy court approved the agreement in June 1995. In August 1995 the Partnership filed a plan of reorganization (the Plan) with the bankruptcy court. That same day, Morrell served on the plaintiffs another notice of intended action describing the Plan. After receiving no objection, the bankruptcy court approved the Plan on November 2, 1995. Under the Plan, the Dharani Family and A.B.H. lost their interests in the Partnership and Narven became the sole owner of the Partnership after contributing $ 549,228. On April 1, 1998, BF acquired title to the Comfort Inn.

*The Complaint Allegations*

On December 1, 1999, plaintiffs filed a complaint against defendants alleging causes of action for fraud, breach of fiduciary [*7] duty and breach of the covenant of good faith and fair dealing. They later filed a first amendment to the complaint, changing some allegations and adding BF, an entity allegedly created by defendants to take ownership of all Partnership property, to a new cause of action for declaratory relief.

The complaint and first amendment allege defendants misrepresented the amount of money needed to fund the bankruptcy reorganization in an attempt to dissuade plaintiffs from contributing additional capital and thus allow them to become the Partnership's sole owners. Plaintiffs also claim that defendants lied about the availability of Laswind funds that the plaintiffs could have used to contribute to the Partnership and concealed the fact that between 1992 and 1995 Baxter transferred $ 158,630 of Laswind funds to entities controlled by him without plaintiffs' knowledge or authority. Plaintiffs also

allege that Baxter wrongfully borrowed $ 174,590 from 100 Spadina Road. Had plaintiffs known about these "loans," they would have demanded immediate repayment and contributed the funds to the Partnership. The third cause of action for breach of the partnership agreement alleges that defendants' wrongful [*8] conduct breached the partnership agreement and the implied covenant of good faith and fair dealing contained therein, resulting in damages and the wrongful dissolution of the Partnership.

As a result of the alleged fraud, breach of fiduciary duty and breach of the partnership agreement, plaintiffs claimed they were deprived of equity in the Partnership assets, loss of appreciation on such assets, and the loss of income from its operations. Their breach of the partnership agreement claim also sought the option, under former Corporations Code section 15038 (repealed effective 1999 by Stats. 1996, ch. 1003, § 1.2), to purchase defendants' interest and continue the Partnership. The fourth cause of action for declaratory relief against defendants and BF asserted that defendants wrongfully dissolved the Partnership by transferring the Partnership assets to BF. Plaintiffs sought a declaration that BF had no interest in the Partnership and that they were entitled to purchase defendants' interest and continue the Partnership.

*The Summary Judgment Motion*

Defendants and BF moved for summary judgment or in the alternative, summary adjudication, arguing all causes of action failed because [*9] (1) the bankruptcy court's confirmation of the Partnership reorganization plan is res judicata and barred the claims; (2) the statute of limitations expired; (3) defendants did not defraud, misrepresent or conceal any material information from plaintiffs; and (4) plaintiffs lost their interest in the Partnership and lacked standing to sue for breach of the partnership agreement and/or wrongful dissolution of the Partnership.

*1. Defendants' Evidence*

The February Letter did not seek a specific sum from the Dharani Family, but Amirali presumed the Partnership wanted the Dharani Family to contribute about $ 275,000. Although Amirali believed the Dharani Family could have contributed less than $ 275,000, they did not discuss this possibility with Baxter and they refused to contribute any additional funds. Thereafter, on numerous occasions Baxter discussed with Badruddin and Amirali the Plan and the need to contribute additional capital; they each acknowledged that they had lost their ownership interest in the Partnership due to their failure to contribute additional capital.

Morrell served the three bankruptcy filings on plaintiffs at "13225 Sherman Way, North Hollywood, California [*10] 91605," an address where Amirali operated a tire business called Bill Wendell Tires. The partnership agreement, executed in December 1984, expressly required that all notices to limited partners be sent to "the address maintained by the Partnership for such person or at such other address as he may specify in writing, and shall be deemed effective . . . 2 days after deposit in the United States mail, postage prepaid." The partnership agreement "Roster of General and Limited Partners" listed the above address for A.B.H., Hassanali and Badruddin.

The Partnership mailed over 20 checks to plaintiffs at the above address from 1992 through 1995; the Dharani Family never informed Baxter that they were not receiving the checks, and they endorsed and deposited all the checks. The Partnership also mailed IRS Schedule K-1 forms to the Dharani Family at the same address and A.B.H. used the address on its tax returns. The post office never returned any of the bankruptcy notices mailed to plaintiffs, and no one ever informed Baxter that the address was improper or that the Dharani Family could not receive their mail at that address.

Plaintiffs did not attempt to keep themselves informed as to [*11] the status of the bankruptcy case, recognizing that they had lost their interests in the Partnership. Baxter, through Narven, was the only partner to commit additional money to the Partnership and for this reason the Plan provided that Narven was the only remaining partner. Baxter obtained the additional capital from an insurance settlement in a personal matter and from personal sources.

*2. Plaintiffs' Evidence*

Badruddin and Hassanali lived in Pakistan and thus all mail went to Amirali at his tire business. After formation of the Partnership, Amirali explained to Baxter that because 13225 Sherman Way was the address for a mail with nine or more businesses, the mailing address needed to include either "Bill Wendell Tires" or "Unit 1" and that mail not including this information might not be delivered. He also provided this information to Baxter by "mail, fax or phone." On one occasion in 1992 or 1993, someone at Narven called Amirali to tell him Narven had A.B.H. checks returned in the mail; after learning that the checks had been sent to "13225 Sherman Way," Amirali again explained that the address needed to include "Bill Wendell Tires" or "Unit 1." Although the A.B.H. tax [*12] returns did not include "Bill Wendell Tires" or "Unit 1" in the address, Amarili explained this was a mistake he was unable to get his accountant to correct; further, A.B.H.'s fax cover sheet did not specify "Bill Wendell Tires" or "Unit 1" because such information

was not necessary in communications with Baxter or with Amarili's brothers.

On February 13, 1995, Baxter sent Morrell a facsimile listing the A.B.H. address as "Bill Wendell Tires, 13225 Sherman Way, North Hollywood, California 91605." Morrell properly addressed the February Letter to A.B.H. at "Bill Wendell Tires" and after Amirali received the letter, he discussed the need for additional capital with Morrell and Baxter, and asked Baxter if they had any money in Canada to contribute. Baxter indicated there was "no money" in Canada and implied he was not willing to take less than one-half of the necessary $ 550,000 ($ 275,000).

At that time Amirali was confident that he had $ 100,000 to contribute and he might have been able to contribute $ 125,000. Amirali and Badruddin discussed the possibility of contributing less money, but they believed Baxter wanted no less than their original contribution percentage, about $ 275,000. [*13] They decided not to invest any additional funds based on Baxter's representation that they had no money in Canada to contribute. After this telephone call Baxter never asked the Dharani Family for additional capital and they believed A.B.H.'s investment had been wiped out.

Hassanali, Amirali and Badruddin never received any of the bankruptcy filings. In fact, the proofs of service for the three bankruptcy notices did not list A.B.H., had an incorrect street number ("132256" instead of "13225") for Hassanali, and did not include the designation "Bill Wendell Tires" or "Unit 1" for Badruddin.

In 1992 Badruddin asked his two brothers for money to refurbish the Comfort Inn. Hassanali did not provide the requested funds because Badruddin had not provided any written documentation regarding the financial status of that investment or any of their other investments. Hassanali did not suspect Baxter of any wrongdoing at that time because he had never met Baxter and he trusted his brother to work with Baxter. No one ever discussed with Hassanali the financial difficulties associated with the Comfort Inn, and other than the one request for capital in 1992, there were no other requests for capital [*14] contributions for the Partnership even after it filed for bankruptcy on May 6, 1994. Baxter never asked the Dharani Family to contribute additional capital to the Partnership and the first and only correspondence received concerning the bankruptcy was the February Letter.

In May 1995 Baxter had 100 Spadina Road/Timron loan the Partnership $ 50,000, masking the transaction by paying the money to his attorney. The attorney's trust account later paid this money to the Lender under the bankruptcy plan. The Dharani Family did not know about these loans. Morrell did not know that the $ 50,000 payment to the Lender was a loan, indicating that the

Lender wanted "new, fresh investment capital" and not additional borrowing. Morrell was "sure" that he discussed the Lender's desire for "new money" with Baxter in 1995. In a sworn declaration filed with the bankruptcy court, Baxter also claimed that he paid $ 63,000 in attorney fees and $ 20,392 in post-petition property taxes required under the Plan; however, he admitted at deposition that he did not personally pay the attorney fees and that the Comfort Inn paid the property taxes out of its own income.

In December 1996 Amirali received financial [*15] statements from his accountants for 100 Spadina Road/Timron and one financial statement for Laswind for the period ending June 30, 1995. He discovered that as of August 1995, Baxter, and companies that Baxter owned and controlled, owed Laswind a total of $ 155,309. The Partnership also owed Laswind about $ 16,000, but Laswind was not listed as a creditor on the bankruptcy schedules because Baxter "wrote off" this debt. (Plaintiffs presented these additional facts in their opposition separate statement. Although defendants objected to this evidence as irrelevant, they did not challenge the accuracy of these facts below or on appeal, and have impliedly waived any additional objections thereto.)

### 3. The Trial Court's Rulings

The trial court issued a telephonic ruling granting summary judgment on the ground *11 United States Code section 1144,* which governs the method by which a bankruptcy reorganization plan may be revoked, barred all causes of action because plaintiffs' request to change ownership of the motel contradicted the bankruptcy reorganization plan. The trial court also concluded that the applicable statute of limitations barred the breach of fiduciary [*16] duty and breach of contract claims. After hearing oral argument, the trial court took the matter under submission and then issued a minute order denying summary judgment and summary adjudication of the fraud cause of action, but granting summary adjudication of the declaratory relief claim. The court allowed the parties to file supplemental briefs addressing when plaintiffs' remaining causes of action for breach of fiduciary duty and breach of contract accrued. Both sides filed additional briefing; after further consideration, the trial court set aside its prior minute order and granted the summary judgment motion, again concluding that *11 United States Code section 1144* barred all causes of action and that the applicable limitation periods had expired.

After the trial court entered judgment in favor of defendants and BF, plaintiffs filed a motion to vacate the judgment, arguing that defendants' supplemental brief exceeded the scope of the trial court's order and amounted to an improper reconsideration motion. Plain-

Case 1:06-mc-00228-JJF    Document 5-2    Filed 02/06/2007    Page 7 of 43

Page 5
2003 Cal. App. Unpub. LEXIS 11126, *

tiffs timely appealed after the trial court denied their motion to vacate the judgment.

## DISCUSSION

### Standard of Review

We review the [*17] trial court's decision granting summary judgment de novo (*Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 860 (Aguilar)*), applying the same three-step analysis required of the trial court. (*Bono v. Clark (2002) 103 Cal.App.4th 1409, 1431-1432.*) After identifying the issues framed by the pleadings, we determine whether the moving party has established facts justifying judgment in its favor. If the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (*Id. at p. 1432.*) We must strictly construe the moving party's evidence and liberally construe the opposing party's evidence (*Binder v. Aetna Life Ins. Co. (1999) 75 Cal.App.4th 832, 838-839)*, and we may not weigh the evidence or conflicting inferences (*Aguilar, supra, 25 Cal.4th at p. 856; Code Civ. Proc., § 437c, subd. (c)* [all undesignated section references are to this code]). A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing [*18] the motion in accordance with the applicable standard of proof. (*Aguilar, supra, 25 Cal.4th at p. 850.*) If there is a single issue of material fact in dispute, the motion must be denied. (§ 437c, subd. (c).)

I

### Statute of Limitations

The trial court concluded that the two-year limitations period applicable to actions not founded upon an instrument in writing (§ 339) barred plaintiffs' breach of fiduciary duty claim because plaintiffs discovered the breach on December 16, 1996, more than two years before they filed their complaint. The trial court also concluded that the four-year limitations period applicable to actions founded upon an instrument in writing (§ 337) barred plaintiffs' claims for breach of the partnership agreement and declaratory relief because these claims accrued at the time of the breach and, to the extent the claims were based on defendants' alleged wrongdoing prior to and during the bankruptcy confirmation, the action was commenced more than four years later. As discussed below, the trial court erred because these causes of action are governed by the limitation period applicable to claims based on fraud and the statute did not begin [*19] to run until plaintiffs discovered the alleged fraud. (§ 338, subd. (d).)

The "cause of action" alleged is the appropriate focus for determining what statutes of limitation apply (§ 312), and it is well established that the applicable statute of limitations is determined by the nature of the right sued upon. (*Davies v. Krasna (1975) 14 Cal.3d 502, 515, 121 Cal. Rptr. 705, 535 P.2d 1161; Day v. Greene (1963) 59 Cal.2d 404, 411, 29 Cal. Rptr. 785, 380 P.2d 385.*) "Neither the caption, form, nor prayer of the complaint will be deemed conclusive in determining the nature of the liability from which that cause of action flows. On the contrary, the true nature of the action will be ascertained from the basic facts *a posteriori.*" (*Agair Inc. v. Shaeffer (1965) 232 Cal. App. 2d 513, 516, 42 Cal. Rptr. 883.*) What is significant for statute of limitations purposes is the primary interest invaded by defendants' "wrongful act." (*Barton v. New United Motor Manufacturing, Inc. (1996) 43 Cal.App.4th 1200, 1207.*)

A partnership is a fiduciary relationship (*BT-I v. Equitable Life Assurance Society (1999) 75 Cal.App.4th 1406, 1410*) [*20] and a general partner owes limited partners fiduciary obligations, including the duty of good faith and fair dealing. (*Johnson v. Superior Court (1995) 38 Cal.App.4th 463, 474.*) Since plaintiffs' cause of action for breach of fiduciary duty rests upon a fiduciary or confidential relationship, it can be classified as an action for constructive fraud. (*Day v. Greene, supra, 59 Cal.2d at p. 411.*) Where constructive fraud is the gravamen of a claim, the three-year limitations period (§ 338, subd. (d)) applies. (*Day v. Green, supra, at p. 411.*) Such a claim does not accrue until the aggrieved party discovers the facts constituting the fraud. (§ 338, subd. (d).)

We must also examine plaintiffs' claim for breach of the partnership agreement to determine the primary interest invaded by defendants' alleged wrongful acts. (*Barton v. New United Motor Manufacturing, Inc., supra, 43 Cal.App.4th at p. 1207.*) Plaintiffs do not identify any particular provision of the partnership agreement breached by defendants. Rather, they generally allege that defendants' fraudulent conduct violated the agreement and/or the implied [*21] covenant of good faith and fair dealing contained therein, causing them damages and resulting in the wrongful dissolution of the Partnership. Where, as here, the gravamen of the claim is fraud, the three-year provision of section 338, subdivision (d) applies. (See *Day v. Greene, supra, 59 Cal.2d at pp. 410-411.*) The delayed discovery rule also applies to breach of contract causes of action involving fraud and misrepresentation because plaintiffs cannot reasonably discover the harm flowing from breaches committed in secret until a future time. (*April Enterprises, Inc. v. KTTV (1983) 147 Cal. App. 3d 805, 832, 195 Cal. Rptr. 421.*)

Finally, the statute of limitations applicable to the declaratory relief remedy depends on the right or obligation sought to be enforced. (*Howard Jarvis Taxpayers*

*Ass'n v. City of La Habra (2001) 25 Cal.4th 809, 821.)* Where the underlying substantive right is timely, the declaratory relief remedy necessarily survives. (*Ibid.*)

II

*Triable Issues of Fact Exist as to Whether Plaintiffs Exercised*

*Due Diligence in Discovering Their Claims*

Under the discovery rule, the accrual of a cause [*22] of action is postponed "until the plaintiff discovers, or has reason to discover" the claim. (*Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397, 981 P.2d 79.)* A plaintiff discovers the cause of action when he or she suspects a factual basis for the claim and the statute begins to run when the plaintiff has notice of facts or circumstances that would put a reasonable person on inquiry. (*Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1110-1111, 245 Cal. Rptr. 658, 751 P.2d 923.)* Constructive and presumed notice or knowledge is equivalent to knowledge, and the statute will begin to run when the plaintiff has the opportunity to obtain knowledge from sources open to investigation. (*Parsons v. Tickner (1995) 31 Cal.App.4th 1513, 1525.)*

In fraud cases involving a fiduciary relationship, the duty to investigate may arise later, as a plaintiff "is entitled to rely upon the assumption that his fiduciary is acting in his behalf." (*Bedolla v. Logan & Frazer (1975) 52 Cal. App. 3d 118, 131, 125 Cal. Rptr. 59.)* However, even in cases involving a fiduciary relationship, when a plaintiff becomes aware of facts "which would make a [*23] reasonably prudent person suspicious," he or she has a duty to investigate those facts and may be charged with the awareness of such facts as an investigation would have discovered. (*Ibid.*) Resolution of a statute of limitations defense normally is a question for the trier of fact and summary judgment is proper if the court can draw only one legitimate inference from uncontradicted evidence. (*Van Dyke v. Dunker & Aced (1996) 46 Cal.App.4th 446, 451.)*

Plaintiffs allege that defendants misrepresented the terms of the bankruptcy reorganization to discourage them from making any new capital contributions and that they relied on Baxter's misrepresentations and concealment when they declined to make any such contributions. They also allege that Baxter misrepresented the amount of capital available in Laswind and concealed the transfer of Laswind funds to his corporations. Had they known about these loans, plaintiffs contend they would have demanded immediate repayment and invested these funds into the Partnership.

Defendants argue that the delayed discovery rule cannot apply to these claims because the sworn bankruptcy proofs of service show Morrell properly served [*24] plaintiffs with the three bankruptcy notices at their address of record under the partnership agreement. Because the uncontroverted evidence proves the notices were properly addressed and mailed, defendants contend plaintiffs should be charged with knowledge of all matters revealed therein. Plaintiffs admit their allegation regarding non-disclosure of the agreements between the Partnership and its Lender turn on whether they were properly served with the bankruptcy notices, but contend a triable issue of material fact exists regarding whether they received the notices. We agree.

The partnership agreement provides that notices sent to "the address maintained by the Partnership for such person or at such other address as he may specify in writing" are deemed effective two days after deposit into the United States mail. While the partnership agreement does not specify that plaintiffs' address includes either "Bill Wendell Tires" or "Unit 1," plaintiffs presented evidence that they informed Baxter, both orally and in writing, of this requirement and explained that mail omitting this information might not be delivered. On February 13, 1995, Baxter sent Morrell a facsimile listing the A. [*25] B.H. address as including "Bill Wendell Tires" and the February Letter that Morrell sent to A.B.H. included this designation. However, the undisputed evidence shows that the bankruptcy service list did not include this designation for Badruddin, listed an incorrect street number for Hassanali and did not include A.B.H. at all. Finally, there is evidence that the Dharani Family never received any of the bankruptcy filings.

Based on this evidence, and other conflicting evidence presented by the parties, the trier of fact must resolve the question of whether the Dharani Family received the bankruptcy notices. Because plaintiffs presented evidence showing they specified in writing that all partnership notices sent to them needed to include the designation "Bill Wendell Tires" or "Unit 1" and the undisputed evidence shows this designation was not used for the bankruptcy notices, we cannot conclude, as a matter of law, that the contractual presumption of receipt applies. Moreover, even if plaintiffs had received the bankruptcy notices, or otherwise kept themselves appraised of the bankruptcy proceedings, this information would not have revealed Baxter's alleged fraud regarding the availability [*26] of funds from the parties' Canadian investments.

Defendants next argue that the three-year limitations period of section 338, subdivision (d) expired because plaintiffs were aware of facts that would have made a reasonably prudent person suspicious, contending plaintiffs had a duty to investigate those facts and that such an

Case 1:06-mc-00228-JJF    Document 5-2    Filed 02/06/2007    Page 9 of 43

Page 7
2003 Cal. App. Unpub. LEXIS 11126, *

investigation would have revealed their claims. However, examination of defendants' arguments and the evidence reveal triable issues of fact that preclude summary judgment.

Defendants contend that plaintiffs' refusal to contribute money to the Partnership in 1992 and request for additional financial information from Baxter shows they were suspicious of Baxter. However, Hassanali testified that he had no reason to suspect Baxter of wrongdoing in 1992, and defendants fail to explain how the investigation of "suspicions" in 1992 could have put plaintiffs on notice of fraud that allegedly occurred during the 1995 bankruptcy proceedings.

Defendants point to Hassanali's testimony that he "lost trust" and began to "doubt" Baxter after Badruddin died in April 1996, arguing we should disregard Hassanali's contradictory declaration, which attempts to create a triable [*27] issue as to when he suspected Baxter of wrongdoing. Defendants correctly argue that admissions in a deposition are conclusive and cannot be contradicted by contrary declarations submitted in opposition to a summary judgment motion. (*Visueta v. General Motors Corp. (1991) 234 Cal. App. 3d 1609, 1613, 286 Cal. Rptr. 402.*) However, after reviewing Hassanali's deposition testimony, we find no contradiction.

Hassanali testified at his deposition that he started to "doubt" Baxter after his brother died "somewhere around" 1996 because he and his brothers had asked for financial statements but had not received them. In his declaration, Hassanali explained that the "doubt" he referred to was whether Baxter would provide requested financial reports about their San Diego and Canadian investments and that this doubt arose in December 1996 or January 1997 after Amirali received financial statements for Laswind and 100 Spadina Road from their accountants. This explanation does not contradict Hassanali's deposition testimony regarding when he suspected Baxter of wrongdoing because the "somewhere around" 1996 testimony is equivocal and encompasses the alleged discovery date of December 16, 1996. ( [*28] *Price v. Wells Fargo Bank (1989) 213 Cal. App. 3d 465, 482, 261 Cal. Rptr. 735* ["Summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence"].)

Defendants contend they did not hide the bankruptcy process from plaintiffs to prevent them from contributing additional capital and did nothing to prevent plaintiffs from contributing money during the bankruptcy reorganization. To support this assertion, defendants cited Amirali's deposition transcript wherein he testified that Baxter was always "crying for money" and that he decided not to "invest even a single dollar" until he received "more information." However, a review of the deposition transcript reveals the cited testimony pertained to a Howard Johnson motel at issue in Baxter's action against A.B.H. and Amirali. Thus, this evidence does not further defendants' arguments.

Even if Amirali was referring to the Partnership, this evidence is subject to differing inferences. A reasonable trier of fact could conclude that Baxter had not sufficiently substantiated his requests for additional capital contributions to the Dharani Family. [*29] In the absence of other evidence, we cannot conclude, as a matter of law, that capital requests and delay in providing information coming from a fiduciary and long-time business associate are sufficient to place a prudent person on inquiry notice of a potential claim.

We also reject defendants' assertion that evidence showing Baxter concealed information about the Canadian investments is irrelevant because the Canadian entities were completely repaid with interest before plaintiffs filed this action. Plaintiffs alleged, and presented evidence, showing that some of defendants' capital contributions to the Partnership's bankruptcy reorganization consisted of unauthorized loans taken from Laswind and 100 Spadina Road/Timron. The fact Baxter repaid these loans before plaintiffs filed this action does not vitiate the alleged fraud and concealment that plaintiffs claim prevented them from participating in the bankruptcy reorganization and ultimately resulted in loss of their Partnership interests.

Defendants also argue that plaintiffs have impermissibly "split" a cause of action because Laswind and 100 Spadina Road filed a complaint-in-intervention against Baxter in the Farah Partners [*30] action. That pleading alleges, among other things, that Baxter wrongfully transferred money from Laswind to Farah Partners and has not repaid the loan. Plaintiffs are not seeking recovery of these funds in this action; rather, they seek damages for the usurped business opportunity engendered by Baxter's alleged misrepresentation and concealment regarding the availability of any Canadian funds to contribute to the Partnership. There is no "splitting" of a cause of action because different primary rights are involved. (*Craig v. County of Los Angeles (1990) 221 Cal. App. 3d 1294, 1301-1302, 271 Cal. Rptr. 82.*)

*The Bankruptcy Reorganization Plan Does Not Bar Plaintiffs'*

*Claims for Monetary Damages*

A confirmed bankruptcy reorganization plan is construed as a contract (*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n (9th Cir. 1993) 997 F.2d 581, 588*), and it can only be revoked on a complaint filed within 180 days

Case 1:06-mc-00228-JJF   Document 5-2   Filed 02/06/2007   Page 10 of 43

Page 8
2003 Cal. App. Unpub. LEXIS 11126, *

after the order is entered and only on grounds that confirmation was obtained by fraud. *(11 U.S.C. § 1144.)* A court may not enlarge the 180-day period (Fed. Rules, Bankr. Proc., rule 9006 [*31] , subd. (b)), nor is the period subject to tolling based on alleged failure to discover grounds for revocation. *(In re 680 Fifth Ave. Associates (Bankr. S.D.N.Y. 1997) 209 B.R. 314, 322.)* All parties to a confirmed plan are bound thereby whether or not they accepted the plan *(11 U.S.C. § 1141*(a)), and the doctrine of res judicata will bar any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised in the bankruptcy proceeding. *(Miller v. Meinhard-Commercial Corp. (5th Cir. 1972) 462 F.2d 358, 360.)* Parties to a confirmed plan include the debtor; any entity issuing securities or acquiring property under the plan; and any creditor, equity security holder, or general partner in the debtor. *(Ibid.)* Equity security holders include limited partners in a limited partnership. *(11 U.S.C. § 101*(16).)*

Because of the need for finality in bankruptcy proceedings, actions that attempt to revoke a confirmation order are subject to the 180-day limitations period in *11 United States Code section 1144. (In re Emmer Bros. Co. (D. Minn. 1985) 52 B.R. 385, 391.)* [*32] However, the Bankruptcy Act does not bar participants injured by fraud from seeking damages or other relief under common law theories in state or federal courts. *(Id. at p. 392.)* Such an action will not be barred by res judicata where "the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement." *(Ibid.)*

Defendants contend that plaintiffs' action is barred by res judicata because it fails all three parts of the above test. They argue that the alleged fraud could have been asserted during the bankruptcy proceeding because plaintiffs had the opportunity to investigate Baxter's alleged misrepresentations and raise their concerns during the bankruptcy, and that plaintiffs' factual claims were actually discussed and adjudicated by the bankruptcy court. They also contend that the relief requested by plaintiffs would upset the Plan and amounts to an improper effort to "redivide the pie." As discussed below, we conclude that the doctrine of res judicata does not bar this action and plaintiffs' claims for monetary damages [*33] would not upset the Plan. However, to the extent plaintiffs seek a declaration that they are the rightful owners of all Partnership property, they lack standing and the requested relief would upset the Plan.

Our earlier discussion shows that, at a minimum, a triable issue of material fact exists as to whether plaintiffs could have asserted their claims in the bankruptcy proceeding. Because the bankruptcy court confirmed the Plan in November 1995, before plaintiffs discovered the alleged fraud and concealment in December 1996, their claims could not have been asserted in the bankruptcy proceeding, nor could these claims have been actually adjudicated. Defendants' citation to Baxter's promise within the Plan and the bankruptcy disclosure statement to provide new value does not show that the bankruptcy court adjudicated defendants' alleged misrepresentations and concealment regarding the source of this funding.

The trial court construed the complaint as an improper attempt to revoke the Plan, concluding that the limitations period of *11 United States Code section 1144* barred all claims. Defendants contend this conclusion must be upheld because plaintiffs' claims [*34] constitute a disguised attempt to revive their former Partnership interests and are barred as a matter of law, pointing out that plaintiffs seek not only money damages but also a declaration that the Partnership is the true owner of the Comfort Inn.

The seminal question is whether plaintiffs can obtain any remedy under their complaint without upsetting the bankruptcy plan. In deciding this question, we must analyze the allegations and the requested relief to determine if the claims would materially impact the Plan. *(In re Circle K Corp. (Bankr. D. Ariz. 1995) 181 B.R. 457, 462.)* In *re Circle K Corp.*, the bankruptcy court dismissed creditors' motion to revoke a confirmed plan for fraud as moot, but concluded "plaintiffs may proceed on a damages claim theory." *(Id. at pp. 459-460.)* The creditors then amended their suit against the debtor and affiliated companies to claim damages for fraud during the confirmation process. *(Id. at p. 463.)* The bankruptcy court held that the amended claims were not barred by *11 United States Code section 1144* and refused to dismiss the action because the remedies sought did [*35] not require revocation of the plan, indicating the court could fashion a damage remedy that did not upset the plan if the plaintiffs were successful. *(In re Circle K Corp.*, at p. 462.)

To determine whether plaintiffs' claims would modify or revoke the Plan, we start by reviewing the general effects of plan confirmation, namely, (1) discharging the debtor, (2) vesting the estate's property in the debtor, and (3) freeing the estate's property from all prior claims. *(11 U.S.C. § 1141.)* Next, we note that plaintiffs' claims allegedly arose during the confirmation process and are against nondebtors. Finally, other than their declaratory relief claim and a portion of their breach of partnership agreement claim, plaintiffs seek money damages equal to the value of the Partnership interests lost through defendants' alleged fraud. Clearly, plaintiffs' damage claims would not modify or upset the Plan because they do not affect distributions made to creditors under the Plan. *(In re Circle K., supra, 181 B.R. at p. 461.)* If we were to

accept defendants' arguments that any award of damages for their alleged fraud would revoke the Plan, then defrauded parties [*36] would be without any legal remedy where wrongdoers in a bankruptcy proceeding successfully conceal their fraud for 181 days. This cannot be, nor is it, the law.

The more difficult question is whether plaintiffs' declaratory relief cause of action would upset the Plan. Plaintiffs seek a declaration that BF has no interest in the Partnership and that they be allowed to purchase BF's interest and continue the Partnership because defendants wrongfully dissolved the Partnership and transferred its assets to BF. Plaintiffs seek a similar remedy in their breach of partnership agreement cause of action. Because these claims for relief were based on the alleged wrongful dissolution of the Partnership, the trial court concluded that plaintiffs were not real parties in interest because they lost their ownership rights when the bankruptcy court confirmed the Plan in 1995, noting that any damages flowed from the reorganization and not the subsequent dissolution.

Plaintiffs now seek to regain their Partnership interests allegedly lost when defendants dissolved the Partnership and transferred its assets to BF. They rely on *Gherman v. Colburn (1977) 72 Cal. App. 3d 544, 140 Cal. Rptr. 330* [*37] for the proposition that a partner who has wrongfully dissolved a partnership in contravention of a partnership agreement may be held liable to another partner for breach of the partnership agreement. While we do not quarrel with this general proposition, plaintiffs overlook the fact that they lost their Partnership interests when the bankruptcy court confirmed the Plan in 1995, not when defendants subsequently dissolved the Partnership. Thus, plaintiffs lack standing to seek this relief because they no longer had a monetary interest in the Partnership at the time of its dissolution. (*In re Mission Heights Investors Ltd. Partnership (Bankr. D. Ariz. 1996) 202 B.R. 131, 138 (Mission Heights)*.)

Moreover, this requested relief would upset the bankruptcy reorganization because the Plan has been fully consummated by payment to all Plan creditors. (*Mission Heights, supra, 202 B.R. at p. 138.*) Plaintiffs in *Mission Heights*, the heirs of a preconfirmation limited partner of the debtor, alleged that the debtor's general partner retained his interest in the debtor by a false promise to infuse cash and property. (*Id. at pp. 135, 137.*) Plaintiffs' [*38] predecessor-in-interest elected not to participate in the reorganization by contributing new value to the debtor and he lost his interest in the debtor. (*Id. at pp. 137-138.*) As a result of this alleged fraud, plaintiffs sought restatement of their equity interest, participation in all profits realized since confirmation and an accounting. (*Id. at p. 137.*)

The bankruptcy court in *Mission Heights* concluded that plaintiffs lacked standing to bring the action because they no longer had a monetary interest in the debtor, the creditors relied on the plan provisions and the relief sought would "require a disgorgement of substantial sums already paid out and a return to the *status quo ante.*" (*Mission Heights, supra, 202 B.R. at p. 138.*) Because plaintiffs similarly seek restatement of their equity interest via their declaratory relief cause of action, this claim fails for the same reasons, and summary adjudication of the fourth cause of action for declaratory relief is proper.

While defendants assert plaintiffs' breach of partnership agreement cause of action fails because it requests a similar remedy, this claim also seeks compensatory [*39] damages resulting from defendants' alleged preconfirmation wrongdoing. We know of no authority requiring summary adjudication of a cause of action merely because *part* of the relief sought may be improper. (See *DeCastro West Chodorow & Burns, Inc. v. Superior Court (1996) 47 Cal.App.4th 410, 422* [summary adjudication of one or more components of damage claim which does not dispose of entire cause of action is not permitted].) For this reason, summary adjudication of plaintiffs' third cause of action for breach of the partnership agreement cannot be granted.

Finally, we note that plaintiffs' sole cause of action against BF is for declaratory relief. Because this claim fails as discussed above, there is no need to discuss this defendant separately except to note that the relation-back doctrine does not apply because plaintiffs added BF to the complaint over four years after plaintiffs' claims accrued in December 1996 and about three years after they filed their original complaint. (*Woo v. Superior Court (1999) 75 Cal.App.4th 169, 176* [amended complaint adding a new defendant does not relate back to the filing of the original complaint and the [*40] statute of limitations as to such new defendants is determined by the date the amended complaint was filed].)

DISPOSITION

The judgment in favor of defendant BF is affirmed. The judgment in favor of defendants Baxter and Narven is reversed. The trial court is directed to enter summary adjudication in favor of Baxter and Narven as to the fourth cause of action for declaratory relief. Appellants' claim that the trial court erred in denying their motion to vacate the judgment is moot. BF is entitled to its costs on appeal and appellants are entitled to costs on appeal as against defendants Baxter and Narven.

MCINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.                    NARES, J.

# B

Page 1

LEXSEE 2006 US DIST LEXIS 26161



Analysis
As of: Feb 05, 2007

**CONSEIL ALAIN ABOUDARAM, S.A., Appellant, v. JACQUES DE GROOTE, Appellee.**

**Civil Action No. 05-988 (RMC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2006 U.S. Dist. LEXIS 26161*

**May 4, 2006, Decided**

**PRIOR HISTORY:** *In re De Groote, 2005 Bankr. LEXIS 248 (Bankr. D.D.C., Feb. 23, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant creditor sought review of an order of the United States Bankruptcy Court for the District of Columbia, which disallowed its claim against the bankruptcy estate of appellee debtor.

**OVERVIEW:** The bankruptcy court had disallowed the creditor's claim on grounds that the claim was barred by res judicata. The instant court concluded res judicata did apply. The facts that were litigated in district court litigation dealing with certain notes and the funds loaned to the debtor were related in time, space, origin, and motivation to those that would have been litigated in a suit on theories that had not been litigated in district court (alternative theories). The suit on the notes and on the alternative theories would have formed a convenient trial unit, and their treatment as a unit would have conformed to the parties' expectations that their loan transaction would be litigated in one case. The creditor argued that it had no reason to file a complaint broader than the notes or to amend the complaint beyond the single claim pleaded. The creditor contended that the debtor conceded 13 times in his counterclaim that a certain individual's advances were covered by the notes. However, the concessions to which the creditor referred were only concessions that the creditor advanced funds to the debtor and that the debtor signed the notes.

**OUTCOME:** The bankruptcy court's order was affirmed.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction*
[HN1] A federal district court has appellate jurisdiction over final orders of the bankruptcy court. *28 U.S.C.S. § 158*(a)(1). An order which conclusively determines a separable dispute over a creditor's claim is a final appealable order under § 158(a)(1).

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN2] The issue of whether or not res judicata applies in a given situation is a question of law.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN3] On appeal, federal district courts review de novo questions of law determined by bankruptcy courts.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN4] Under the doctrine of res judicata, also known as claim preclusion, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.

Case 1:06-mc-00228-JJF    Document 5-2    Filed 02/06/2007    Page 15 of 43

Page 2
2006 U.S. Dist. LEXIS 26161, *

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN5] To determine whether two cases involve the same cause of action, the United States Court of Appeals for the District of Columbia Circuit has adopted the "pragmatic, transactional" approach found in the Restatement (Second) of Judgments. Under this approach, a court must consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. The most critical question in determining if two causes of action are actually the same is whether the plaintiff had a previous opportunity to present evidence on his claims.

*Contracts Law > Breach > Causes of Action > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN6] A plaintiff in a suit to collect a debt bears the burden of proving the debt.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN7] Res judicata does not apply when the party sought to be barred was prevented by his adversary's fraud or misconduct from presenting an issue at trial.

COUNSEL:    [*1]    For CONSEIL ALAIN ABOUDARAM, S.A., Appellant: James L. Marketos, Alexander Craig Vincent, BERLINER, CORCORAN & ROWE, LLP, Washington, DC.

For JACQUES DE GROOTE, Appellee: Alan David Eisler, Stark, Meyers & Eisler, LLC, Rockville, MD; Wendelin Isadora Lipp, PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG & COOPER, CHTD, Bethesda, MD; Stephen Sale, CLAXTON, SALE & QUINN, P.C., Washington, DC.

JUDGES: ROSEMARY M. COLLYER, United States District Judge.

OPINION BY: ROSEMARY M. COLLYER

OPINION:

**MEMORANDUM OPINION**

Conseil Alain Aboudaram, S.A. ("CAASA") appeals the bankruptcy court's disallowance of its claim against the bankruptcy estate of Jacques de Groote. The bankruptcy court disallowed the claim, finding that the claim was barred by *res judicata*. *In re Jacques de Groote*, Case No. 02-981 (Bankr. D.D.C.) (Decision Re Motion for Summary Judgment, Dkt. # 307 and Order Granting Motion for Summary Judgment, Dkt. # 308, both filed Feb. 23, 2005) (the "Bankruptcy Court Litigation"). On appeal, CAASA contends that this ruling was in error. As explained below, this Court disagrees. The order of the bankruptcy court will be affirmed.

**I. BACKGROUND FACTS**

On January 3, 2001, CAASA filed a single [*2] count complaint against Mr. de Groote, seeking to recover on two promissory notes. *See Conseil Alain Aboudaram, S.A. v. de Groote*, No. 01-6 (Bates, J.) (the "District Court Litigation"). CAASA alleged a breach of contract based on the notes, secured by Mr. de Groote's residence in the Georgetown neighborhood of Washington, D.C. Subsequently, Mr. de Groote filed a Chapter 11 petition for bankruptcy protection, listing CAASA as one of his major creditors. CAASA filed a Proof of Claim, advancing a claim in the amount of $ 1,385,093.17, partially secured by second and third deeds of trust on the Georgetown residence.

The Chapter 11 petition automatically stayed the District Court Litigation. *11 U.S.C. § 362(a)*. The Bankruptcy Court then granted CAASA's motion to lift the stay to permit the District Court Litigation "to proceed to allow the District Court to reduce to judgment the amount of CAASA's and/or the Debtor's respective claims and counterclaims." *In re Jacques de Groote*, Case No. 02-981 (Consent Lift Stay Order, Dkt. # 61).

A. The District Court Litigation

The first note, dated December 19, 1995, provided a line of credit in the amount of $ [*3] 400,000, and the second note, dated October 13, 1998, provided a line of credit in the amount of $ 100,000 (collectively the "Notes"). CAASA alleged that as of December 31, 2003, Mr. de Groote owed $ 421,576.67 in principal, $ 96,902.58 in interest, and $ 1,863,348.41 for the costs of enforcement under the Notes. *Conseil Alain Aboudaram*, No. 01-6 (Pretrial Statement, Dkt. # 91). Mr. de Groote contended that he had paid the notes in full; he also counterclaimed, alleging that CAASA owed him millions of dollars in compensation for consulting work. n1

n1 CAASA hired Mr. de Groote, former Executive Director of the World Bank, as a consultant to help CAASA's client obtain a World Bank contract for construction of an oil pipeline in India. The parties dispute the terms and amount of

Case 1:06-mc-00228-JJF    Document 5-2    Filed 02/06/2007    Page 16 of 43

Page 3
2006 U.S. Dist. LEXIS 26161, *

payment due to Mr. de Groote for his consulting work.

While CAASA advanced funds to Mr. de Groote, CAASA's principal owner and president, Alain Aboudaram, also advanced monies to Mr. de Groote. The parties stipulated that Mr. Aboudaram [*4] had advanced $ 396,357.59 to Mr. de Groote. Mr. Aboudaram testified that these were personal loans, and Mr. de Groote conceded that he still owes on these loans from Mr. Aboudaram. *Conseil Alain Aboudaram, S.A. v. de Groote, 2004 U.S. Dist. LEXIS 10219, *2, No. 01-6 (D.D.C. June 7, 2004)* (Memorandum Opinion, Dkt. # 156). According to Mr. Aboudaram, the Notes covered Mr. Aboudaram's personal loans to Mr. de Groote. *2004 U.S. Dist. LEXIS 10219 at *8.* Mr. de Groote denied this allegation. *2004 U.S. Dist. LEXIS 10219 at *8.* However, Mr. Aboudaram was not a party to the District Court Litigation. n2 As the District Court Litigation evolved, the key question that arose was whether CAASA could recover for amounts advanced by Mr. Aboudaram personally and whether the Notes and accompanying deeds of trust somehow covered the advances made by Mr. Aboudaram. n3

n2 Not only was Mr. Aboudaram not a party to the District Court Litigation, he also did not participate in the Bankruptcy Court Litigation. He did not file a proof of claim or assert his rights as a creditor in any other way.

n3 The Notes indicated that advances were to be recorded on an attached grid and endorsed by Mr. de Groote. *Conseil Alain Aboudaram, 2004 U.S. Dist. LEXIS 10219, No. 01-6, [slip op.] at 4.* At trial, CAASA attempted to introduce grids into evidence that showed advances made by Mr. Aboudaram in 1996. *2004 U.S. Dist. LEXIS 10219, [slip op.] at 10.* Mr. de Groote argued that no grids were attached when he signed the notes and that he never endorsed any grids. CAASA consented to the exclusion of the grids from the evidence. *Id.*

[*5]

The Notes expressly covered advances made by the "Lender" to the "Borrower." "Lender" was defined as CAASA, and "Borrower" was defined as Mr. de Groote. Counsel for CAASA testified at trial that he drafted the Notes and that the Notes clearly required Mr. de Groote to repay CAASA for advances CAASA made to him. *2004 U.S. Dist. LEXIS 10219, [slip op.] at 5-6.* Further, CAASA did not carry on its books any of the personal advances made by Mr. Aboudaram. *2004 U.S. Dist.*

*LEXIS 10219, [slip op.] at 3 n. 2.* At trial the parties stipulated that Mr. de Groote had repaid all of the loan advances made by CAASA. *2004 U.S. Dist. LEXIS 10219, [slip op.] at 5 n. 6.*

CAASA alleged that Mr. Aboudaram had assigned to CAASA the personal debt that Mr. de Groote owed to Mr. Aboudaram, but never produced any documentary evidence during discovery in support of such an assignment. During opening statements, counsel for CAASA indicated that Mr. Aboudaram had formally assigned the debt to CAASA. Further, CAASA indicated that it would call Annie Aboudaram, Mr. Aboudaram's daughter, to testify regarding the assignment. Mr. de Groote moved to strike Ms. Aboudaram as a witness because she had not been identified previously. The District Court denied the motion to strike and instead ordered the deposition [*6] of Ms. Aboudaram. At her deposition, Ms. Aboudaram asserted that her father had assigned to CAASA his personal loan to Mr. de Groote and that such assignment was reflected in a document. *2004 U.S. Dist. LEXIS at *11 n. 9.* The document was not produced at the deposition. Instead, on the first day of trial, CAASA offered as trial exhibits an original letter in French, dated 1999 (Plaintiff's Exhibit 150), along with an English translation. The letter was from Mr. Aboudaram to CAASA, instructing CAASA to undertake collection efforts on Mr. Aboudaram's loans to Mr. de Groote. Mr. de Groote objected to the introduction of the letter because it had never been produced in discovery although such documents had been requested. The District Court sustained the objection, excluded the letter from evidence, and excluded Ms. Aboudaram's proposed testimony regarding the letter. *Id.*

After CAASA rested its case in chief, Mr. de Groote moved for judgment as a matter of law under *Federal Rule of Civil Procedure 50(a).* The District Court took the motion under advisement. *2004 U.S. Dist. LEXIS 10219, [slip op.] at 9 n. 11.* Mr. de Groote renewed the *Rule 50(a)* motion at the end of trial, and the District [*7] Court again took it under advisement. *Id.* The jury rendered a verdict for CAASA, finding that there was an enforceable contract under the terms of the Notes, that Mr. de Groote had breached the contract by defaulting on the Notes, and that CAASA was entitled to $ 536,263.55 in damages. The jury rejected Mr. de Groote's counterclaims. *2004 U.S. Dist. LEXIS 10219 at *2.*

Mr. de Groote renewed his motion for judgment as a matter of law, under *Federal Rule of Civil Procedure 50(b)* (judgment as a matter of law after trial). The jury verdict awarded monies that the parties agreed were loaned personally by Mr. Aboudaram to Mr. de Groote, yet Mr. Aboudaram was not named as a lender in the Notes. *2004 U.S. Dist. LEXIS 10219, *3.* Thus, Mr. de Groote argued that the Notes do not cover the funds he

Case 1:06-mc-00228-JJF   Document 5-2   Filed 02/06/2007   Page 17 of 43

Page 4
2006 U.S. Dist. LEXIS 26161, *

owes to Mr. Aboudaram and that he had repaid the debt to CAASA that was reflected in the Notes. At that point, CAASA moved to amend the complaint to state a claim for reformation, arguing that Mr. de Groote impliedly consented to trial of the full debt. CAASA also requested that the Court deem the Notes to be reformed, arguing that the Notes contained a clerical error--that "Lender" should have [*8] been defined as Mr. Aboudaram and CAASA. Not surprisingly, Mr. de Groote opposed CAASA's motion.

The District Court denied the motion to amend because Mr. de Groote had not received notice of or consented to the trial of a reformation count. n4 *2004 U.S. Dist. LEXIS 10219, [slip op.] at 10-11.* The District Court then entered judgment in favor of Mr. de Groote, despite the jury verdict. The District Court explained:

> No reasonable jury could have found that Aboudaram's advances to de Groote were covered by the promissory notes, which by their terms reach only advances from CAASA, as the "Lender," to de Groote. Having found based on the stipulation of the parties that all such advances have been repaid, the Court must enter judgment for de Groote on CAASA's claim for breach of contract on the promissory notes.

*Id.* n5

n4 CAASA also had moved to amend by an oral motion at trial after CAASA had rested its case. In this oral motion to amend, CAASA sought to 1) add a count of breach of oral promise to pay CAASA for Mr. Aboudaram's advances; 2) add a count for breach of oral promise to pay Mr. Aboudaram for Mr. Aboudaram's advances; and 3) join Mr. Aboudaram as an additional plaintiff. Mr. de Groote opposed the motion on the grounds that he would be prejudiced by such a late amendment. The District Court agreed with Mr. de Groote and denied the motion.

[*9]

n5 CAASA's appeal of the District Court's decision is still pending. *Conseil Alain Aboudaram, S.A. v. de Groote*, No. 04-7167 (D.C. Cir.)

(appeal filed Oct. 8, 2004) and No. 04-7168 (D.C. Cir.) (appeal filed Oct. 12, 2004).

### B. The Bankruptcy Court Litigation

After the District Court Litigation was reduced to judgment, on August 27, 2004, CAASA filed an Amended Proof of Claim in the Bankruptcy Litigation, in the amount of $ 1,374,742.61. n6 Mr. de Groote filed an Objection to CAASA's Amended Proof of Claim and moved for summary judgment, alleging that the Claim was barred on *res judicata* grounds by the District Court Litigation. CAASA opposed Mr. de Groote's Objection, contending that the Amended Proof of Claim was based on theories that had not been litigated in the District Court Litigation: 1) express written contract (including third-party beneficiary contract); 2) express oral contract; 3) implied-in-fact contract; 4) implied-in-law contract (a/k/a assumpsit for money had and received, money lent, quasi contract or unjust enrichment); 5) account stated; 6) promissory estoppel; [*10] and 7) equitable and judicial estoppel (collectively the "Alternative Theories").

n6 CAASA's Amended Proof of Claim contained an incorrect amount due to a typographical error. CAASA later corrected the error in its Opposition to Debtor's Objection to Proofs of Claim. *In re Jacques de Groote*, Case No. 02-981 (Opposition to Debtor's Objection to Proofs of Claim, Dkt. # 218).

The Bankruptcy Court granted Mr. de Groote's motion for summary judgment and disallowed CAASA's Amended Proof of Claim, finding that the District Court Litigation barred the Claim by *res judicata* because CAASA has already litigated or could have litigated its Alternative Theories. *In re Jacques de Groote*, Case No. 02-981, (Decision Re Motion for Summary Judgment, Dkt. # 307 and Order Granting Motion for Summary Judgment, Dkt. # 308) (collectively, the "Disallowance Order"). n7 CAASA appealed the Disallowance Order to this Court.

n7 On March 7, 2005, CAASA moved to amend the Order Granting Motion for Summary Judgment, seeking to add language that would deprive the Order of *res judicata* effect pending the outcome of the appeal of the District Court Litigation. The Bankruptcy Court denied the motion to amend, but indicated that "the summary judgment order may be vacated on a Rule 60 motion if the court of appeals reverses the related

2006 U.S. Dist. LEXIS 26161, *

district court judgment." *In re Jacques de Groote*, Case No. 02-981 (Order Denying CASA's Motion to Amend Order, Dkt. # 344). On May 18, 2005, the Bankruptcy Court approved an order conditionally confirming Mr. De Groote's plan of reorganization pending the final determination of this bankruptcy appeal and the appeal of the District Court's decision in the District Court Litigation. *See In re Jacques de Groote*, Case No. 02-981 (Conditional Confirmation Order, Dkt. # 295).

[*11]

## II. JURISDICTION AND STANDARD OF REVIEW

[HN1] A federal district court has appellate jurisdiction over final orders of the bankruptcy court. *28 U.S.C. § 158(a)(1)*. An order which conclusively determines a separable dispute over a creditor's claim is a final appealable order under *section 158(a)(1)*. *In re St. Charles Preservation Investors, Ltd., 112 B.R. 469, 472 (D.D.C.), appeal dismissed on other grounds, 286 U.S. App. D.C. 312, 916 F.2d 727 (D.C. Cir. 1990)*. *See also Walch Trucking Co., Inc. v. Ins. Co. of N. Am. (In re Walsh Trucking Co.), 838 F.2d 698, 701 (3d Cir. 1988)* (order denying creditor's claim is immediately appealable). Thus, the bankruptcy court's Disallowance Order is a final order over which this Court has appellate jurisdiction.

[HN2] The issue of whether or not *res judicata* applies in a given situation is a question of law. *Athridge v. Aetna Cas. & Sur. Co., 359 U.S. App. D.C. 22, 351 F.3d 1166, 1171 (D.C. Cir. 2003)*. [HN3] On appeal, federal district courts review *de novo* questions of law determined by bankruptcy courts. *Apotex, Inc. v. FDA, 364 U.S. App. D.C. 187, 393 F.3d 210, 217 (D.C. Cir. 2004)*. [*12] Therefore, the issue of whether the District Court Litigation barred by *res judicata* CAASA's Amended Proof of Claim in bankruptcy court was a question of law determined by the bankruptcy court, and this Court will apply a *de novo* standard of review.

## III. ANALYSIS

[HN4] Under the doctrine of *res judicata*, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n. 5, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)*; *Apotex, Inc. v. FDA, 393 F.3d at 217*. The doctrine of *res judicata* promotes the conclusive resolution of disputes. *Apotex, 393 F.3d at 217*. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple 05-cv-00988-RMC Document 19

Filed 05/04/2006 Page 8 of 12 lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979)*. [*13] The doctrine embodies the principle that "a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *SBC Comms. Inc. v. FCC, 366 U.S. App. D.C. 27, 407 F.3d 1223, 1229 (D.C. Cir. 2005)* (quoting *Restatement (Second) of Judgments, ch. 1 at 6 (1982)*).

[HN5] To determine whether two cases involve the same cause of action, the D.C. Circuit has adopted the "pragmatic, transactional" approach found in the Restatement (Second) of Judgments. *U.S. Industries, Inc. v. Blake Constr. Co., Inc., 246 U.S. App. D.C. 326, 765 F.2d 195, 205 (D.C. Cir. 1985)* (adopting *Restatement (Second) of Judgments § 23(2) (1982)*). Under this approach, a court must consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* The D.C. Circuit in *U.S. Industries* specifically examined whether there was an identity of parties, an identity of subject matter, and an identity of contract between [*14] the two cases, and whether there was a final adjudication on the merits in the prior case. *Id. at 206*. The most critical question in determining if two causes of action are actually the same is whether the plaintiff had a previous opportunity to present evidence on his claims. *See id.*

The facts that were litigated in the District Court Litigation dealing with the Notes and the funds loaned to Mr. de Groote are related in time, space, origin, and motivation to those that would be litigated in a suit on CAASA's Alternative Theories. The suit on the Notes and one on the Alternative Theories would have formed a convenient trial unit, and their treatment as a unit would have conformed to the parties' expectations that their loan transaction would be litigated in one case. The Bankruptcy Court held that *res judicata* plainly applies, and this Court agrees.

CAASA contends that *res judicata* does not apply because the parties "understood" that Mr. de Groote's debt to Mr. Aboudaram personally was embodied in the Notes and secured by the deeds of trust and that Mr. de Groote "confounded those expectations and frustrated common business understandings and usages by concealing [*15] a defense intrinsic to the notes until trial." Brief for Appellant at 26. In sum, CAASA asserts that 1) Mr. de Groote "concealed" his defense; 2) CAASA was "unfairly surprised" by Mr. de Groote's position that the Notes did not cover Mr. Aboudaram's personal loans to Mr. de Groote; and 3) Mr. de Groote conceded that Mr.

Case 1:06-mc-00228-JJF    Document 5-2    Filed 02/06/2007    Page 19 of 43

Page 6
2006 U.S. Dist. LEXIS 26161, *

Aboudaram's advances were covered by the Notes. Thus, CAASA argues, it "had no reason to file a complaint broader than the promissory notes or to amend the complaint beyond the single claim pleaded." *Id.* at 29.

CAASA's arguments are disingenuous. CAASA contends that Mr. de Groote conceded thirteen times in his counterclaim that Mr. Aboudaram's advances were covered by the Notes. Appellant's Brief at 13. However, the concessions to which CAASA refers are only concessions that CAASA advanced funds to Mr. de Groote and that Mr. de Groote signed the Notes. *Id.* at 13-14. While CAASA may have "understood" that the Notes covered Mr. Aboudaram's personal loans to Mr. de Groote, there is no evidence that Mr. de Groote believed or agreed that this was true. Mr. de Groote never stipulated that the Notes covered personal advances from Mr. Aboudaram, and CAASA's erroneous [*16] assumption that he had done so certainly is not binding upon Mr. de Groote. The Notes themselves expressly defined the Lender only as CAASA. This explicit language could not have been a surprise, as the Notes were drafted by counsel for CAASA. CAASA had every reason to file a broader complaint or to amend its complaint before trial. CAASA knew that its principal, Mr. Aboudaram, had personally loaned funds to Mr. de Groote and knew that the Notes defined the Lender as CAASA. There is simply no way that under the Notes that CAASA could recover funds advanced personally by Mr. Aboudaram without advancing some other legal theory such as assignment or oral contract.

Furthermore, it is elementary that [HN6] a plaintiff in a suit to collect a debt bears the burden of proving the debt. CAASA was aware of this burden of proof, as evidenced by its assertion in its opening statement that Mr. Aboudaram had assigned his claims against Mr. de Groote to CAASA. *See Conseil Alain Aboudaram*, No. 01-6 (Pretrial Statement at 8). CAASA failed to meet its burden of proof, largely due to its own failure to comply with discovery. Due to CAASA's failure to turn over the document in discovery, the District Court [*17] excluded the letter from Mr. Aboudaram instructing CAASA to collect on Mr. de Groote's debt to Mr. Aboudaram and the District Court excluded the testimony of Annie Aboudaram regarding the alleged assignment.

Also, CAASA contends that *res judicata* only bars claims that it had the opportunity to litigate. Because the District Court denied CAASA's motion to amend, CAASA argues that it did not have the opportunity to litigate its Alternative Theories and the Alternative Theories should not be barred. This argument has no merit. CAASA pursued a legal strategy to collect $ 421,576.67 in principal, $ 96,902.58 in interest, and $ 1,863,348.41 in costs of enforcement under the Notes. The Court surmises that CAASA focused on recovery under the Notes

because the Notes provided for repayment of the costs of enforcement and were secured by deeds of trust on Mr. de Groote's residence. This legal strategy did not preclude CAASA from asserting other legal theories in its complaint or prevent Mr. Aboudaram from joining as a plaintiff. Further, under *Federal Rule of Civil Procedure 15*, CAASA easily could have amended its complaint to include its Alternative [*18] Theories prior to trial. The District Court's order refused to allow CAASA amend after CAASA had rested its case at trial. CAASA chose to pursue a one-track strategy and did not assert its Alternative Theories in a timely manner. As a result, CAASA is barred by *res judicata* from now using the Alternative Theories to recover the same debt.

CAASA also argues that the *Throckmorton* exception to *res judicata* applies. In *United States v. Throckmorton, 98 U.S. 61, 65-66, 25 L. Ed. 93 (1878)*, the Supreme Court recognized that [HN7] *res judicata* does not apply when the party sought to be barred was prevented by his adversary's fraud or misconduct from presenting an issue at trial. *See also Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986)* (holding that lack of knowledge will not avoid *res judicata* unless there was fraud that caused plaintiff to fail to include claim in former action). There is no evidence that Mr. de Groote engaged in fraud or misconduct or otherwise concealed facts from CAASA. The facts were apparent on the face of the Notes. The Notes, drafted by CAASA, explicitly defined the Lender as CAASA. CAASA had the burden of proof [*19] on its suit to collect on the Notes. Requiring CAASA to meet its burden of proof does not constitute fraud or misconduct.

CAASA further argues that its due process rights were violated because it did not receive "constitutionally adequate notice of de Groote's new issue." As explained above, it is this Court's view that there simply was no concealment. The facts were open and obvious. Because CAASA had all of the relevant facts available to it, CAASA cannot assert that it somehow lacked "notice." Further, CAASA had a full and fair opportunity to litigate its cause of action. CAASA's due process argument is baseless.

Finally, relying on *Lunsford v. Kosanke, 140 Cal. App. 2d 623, 295 P.2d 432 (Cal. Ct. App. 1956)*, and *Sawyer v. First City Fin. Corp., 124 Cal. App. 390, 177 Cal.Rptr. 398 (Cal. Ct. App. 1981)*, CAASA contends that because Mr. de Groote successfully prevented CAASA from amending its complaint to assert CAASA's Alternative Theories, Mr. de Groote should be estopped from asserting *res judicata* to bar them. CAASA's appeal is governed by applicable federal precedent, not by California law. *Lunsford* and *Sawyer*, both decided under [*20] California law, are not binding on this Court and are not persuasive. In *Sawyer*, the court held that the de-

2006 U.S. Dist. LEXIS 26161, *

fendant's successful opposition to the plaintiff's motion to consolidate two trials did not estop the defendant from asserting *res judicata* to bar the second suit. More to the point, this Court agrees with the bankruptcy court that *Lunsford* is "plainly at odds with the doctrine of *res judicata* as applied by more recent decisions" of the D.C. Circuit. *In re Jacques de Groote*, Decision Re Motion for Summary Judgment (Dkt. # 307) at 15; *see e.g., Apotex, 393 F.3d at 217. Lunsford* also is distinguishable because the complaint in that case was so defective that the court found no evidence was admissible. *295 P.2d at 435*. As a result, there was no trial and no judgment on the merits. *Id.* Here, CAASA tried its case and obtained a judgment on the merits. There is no estoppel.

## IV. CONCLUSION

After reviewing the facts and the law *de novo*, the Court finds that the bankruptcy court did not err in holding that *res judicata* barred CAASA's Amended Proof of Claim. The Disallowance Order is affirmed, CAASA's appeal is [*21] denied, and this case is dismissed. A memorializing order accompanies this Memorandum Opinion.

DATE: May 4, 2006

    /s/

    ROSEMARY M. COLLYER

    United States District Judge

# C

LEXSEE 2003 US DIST LEXIS 23703



Analysis
As of: Feb 05, 2007

**AMKOR TECHNOLOGY, INC., a Delaware Corporation, Plaintiff v. ALCATEL
BUSINESS SYSTEMS, a French Corporation, ASSURANCES GENERALES DE
FRANCE IART, a French Corporation, and ALCATEL MICROELECTRONICS
N.V., a Belgian Corporation, Defendants**

**CIVIL ACTION No. 02-3156**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

*2003 U.S. Dist. LEXIS 23703*

**December 29, 2003, Decided**

**SUBSEQUENT HISTORY:** Later proceeding at *Amkor Tech., Inc. v. Alcatel Bus. Sys., 2004 U.S. Dist. LEXIS 8996 (E.D. Pa., Apr. 26, 2004)*

**PRIOR HISTORY:** *Amkor Tech., Inc. v. Alcatel Bus. Sys., 278 F. Supp. 2d 519, 2003 U.S. Dist. LEXIS 14561 (E.D. Pa., 2003)*

**DISPOSITION:** [*1] Defendants' motion for reconsideration or certification of order for interlocutory appeal DENIED. Defendants ordered to file answer to plaintiff's complaint.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant foreign corporations filed a motion for reconsideration of the court's order denying their motion to dismiss plaintiff technology corporation's action for lack of jurisdiction and failure to state a claim. In the alternative, the foreign corporations sought certification of the order for interlocutory appeal under *28 U.S.C.S. § 1292*(b).

**OVERVIEW:** The foreign corporations argued that the court misapplied the "direct benefit" estoppel standard in declining to dismiss the action for lack of personal jurisdiction. They also claimed that the court misapplied the doctrine of international comity in declining to dismiss the action for failure to state a claim. The court held that it would not disturb its order because it did not misapply

either legal doctrine and the factual assertions upon which it relied were substantiated. Certification for interlocutory appeal under § 1292(b) was not warranted because there was no assertion that the prior ruling involved a controlling issue of law as to which the answer was in doubt such that prompt appellate review could materially advance the ultimate termination of the action.

**OUTCOME:** The court denied defendant's motion for reconsideration or for certification of an order for interlocutory appeal.

**LexisNexis(R) Headnotes**

*Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders*
*International Law > Dispute Resolution > Comity Doctrine > General Overview*
[HN1] A district court may certify an order for interlocutory appeal when it determines that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *28 U.S.C.S. § 1292*(b).

**COUNSEL:** For AMKOR TECHNOLOGY, INC., Petitioner: DAVID S. STEUER, IGNACIO E. SALCEDA, MONIQUE C. WINKLER, LEAD ATTORNEYS,

2003 U.S. Dist. LEXIS 23703, *

WILSON SONSINI GOODRICH & ROSATI, PALO ALTO, CA.

For AMKOR TECHNOLOGY, INC., Petitioner: PATRICK LOFTUS, LEAD ATTORNEY, DUANE MORRIS LLP, PHILADELPHIA, PA.

For ALCATEL BUSINESS SYSTEMS, ASSURANCES GENERALES DE FRANCE IART, Respondents: BRETT A. SCHER, THOMAS A. LEGHORN, LEAD ATTORNEYS, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, NEW YORK, NY.

For ALCATEL BUSINESS SYSTEMS, ASSURANCES GENERALES DE FRANCE IART, ALCATEL MICROELECTRONICS N.V., Respondents: LOUIS J. ISAACSOHN, LEAD ATTORNEY, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, PHILADELPHIA, PA.

For ALCATEL BUSINESS SYSTEMS, ASSURANCES GENERALES DE FRANCE IART, Respondents: WENDY D. TESTA, LEAD ATTORNEY, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, PHILADELPHIA, PA.

**JUDGES:** Louis H. Pollak, [*2] J.

**OPINION BY:** Louis H. Pollak

**OPINION:**

### MEMORANDUM / ORDER

On August 26, 2003, this court issued an opinion and order denying the motion by Alcatel Business Systems and Assurances Generales de France Iart (collectively, "defendants") to dismiss this action. Defendants have now filed a motion seeking reconsideration or, in the alternative, certification of the order for interlocutory appeal under *28 U.S.C. § 1292(b)*. Defendants contend that, in declining to dismiss this action for lack of personal jurisdiction under *Federal Rule of Civil Procedure 12(b)(2)*, this court misapplied the "direct benefit" estoppel standard articulated in *American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349 (2d Cir. 1999)*, and improperly relied on unsubstantiated factual assertions submitted by plaintiff Amkor Technology, Inc.

("plaintiff"). Defendants also maintain that the court misapplied the doctrine of international comity in denying defendants' *Rule 12(b)(6)* motion to dismiss for failure to state a claim upon which relief can be granted.

Having considered defendants' motion, the court will not disturb its order [*3] denying the motion to dismiss. None of the arguments raised by defendants persuade this court that its interpretation of *Tencara* was erroneous, that the factual assertions on which it relied were unsubstantiated, or that its application of the doctrine of international comity was incorrect. Moreover, the court is not persuaded that the circumstances warrant certifying the matter for appeal. [HN1] A district court may certify an order for interlocutory appeal when it determines that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation ...." *28 U.S.C. § 1292(b)*. The crux of defendants' argument in support of their motion is that this court erred in its application of existing law to the facts of the case - not that the court's ruling was keyed to a "controlling issue of law" the answer to which is in doubt and prompt appellate resolution of which "may materially advance the ultimate termination of the litigation."

Accordingly, it is hereby ORDERED that:

> (1) Defendants' motion for reconsideration [*4] or certification of an order for interlocutory appeal (Docket # 23) is DENIED.

> (2) Within 20 days of the date of this order, defendants shall submit to this court, with a copy to plaintiff, their answer to plaintiff's complaint.

> (3) Within 40 days of the date of this order, all parties shall file with this court, with a copy to the opposing parties, submissions discussing the proper resolution of this case in light of the court's opinion of August 22, 2003, and today's order.

Louis H. Pollak, J.

# D



Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1819969 (E.D.Pa.), 2005-2 Trade Cases P 74,928
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Bradburn Parent Teacher Store, Inc. v. 3M E.D.Pa.,2005.
United States District Court,E.D. Pennsylvania.
BRADBURN PARENT TEACHER STORE, INC.,
On Behalf of Itself and Others Similarly Situated
v.
3M (Minnesota Mining and Manufacturing Company)
**No. Civ.A.02-7676.**

Aug. 2, 2005.

Charles M. Jones, Jones Osteen Jones & Arnold, Hinesville, GA, Gregory Baruch, J. Daniel Leftwich, Robert Stephen Berry, Berry & Leftwich, Washington, DC, Anthony J. Bolognese, Bolognese & Associates, LLC, Philadelphia, PA, Paul E. Slater, Chicago, IL, for Bradburn Parent Teacher Store, Inc., On Behalf of Itself and Others Similarly Situated.
Brent N. Rushforth, Kit A. Pierson, Martina M. Stewart, Paul Alexander, Heller Ehrman LLP, Washington, DC, David W. Engstrom, Eleanor Illoway, John G. Harkins, Jr., Harkins Cunningham LLP, Philadelphia, PA, Jaideep Venkatesan, Heller Ehrman LLP, Menlo Park, CA, for 3M (Minnesota Mining and Manufacturing Company).

*MEMORANDUM*
PADOVA, J.
**\*1** Plaintiff, Bradburn Parent Teacher Store, Inc. ("Bradburn"), has brought this antitrust class action against Defendant 3M for damages arising out of 3M's anti-competitive conduct during the time period from October 2, 1998 through the present. Presently before the Court is 3M's "Motion for Certification of the Court's June 9, 2005 Collateral Estoppel Order Pursuant to 28 U.S.C. § 1292(b)." For the reasons that follow, said Motion is granted.

I. BACKGROUND

The conduct of 3M which forms the basis of this class action lawsuit was the subject of a prior lawsuit in this Court, *Le Page's, Inc. v. 3M,* Civ. A. No.

97-3983 (E.D.Pa.). In that suit, LePage's, Inc., a competing supplier of transparent tape, sued 3M alleging, *inter alia,* unlawful maintenance of monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. After a nine-week trial, the jury found in favor of LePage's on its unlawful maintenance of monopoly power claim. The jury awarded damages in the amount of $22,828,899.00, which were subsequently trebled to $68,486,697.00. *See Le Page's, Inc. v. 3M,* Civ. A. No. 97-3983, 2000 WL 280350 (E.D.Pa. Mar.14, 2000). 3M filed a Motion for Judgment as a Matter of Law, which this Court denied on March 14, 2000. *See id.* 3M thereafter appealed this Court's denial of its Motion for Judgment as a Matter of Law to the United States Court of Appeals for the Third Circuit ("Third Circuit"). A Third Circuit panel initially reversed this Court's Order upholding the jury's verdict and directed the Court to enter judgment for 3M on LePage's' unlawful maintenance of monopoly power claim. *LePage's, Inc. v. 3M,* 277 F.3d 365 (3d Cir.2002) ( *"LePage's I"* ). Upon rehearing *en banc,* the Third Circuit vacated the panel decision and reinstated the original jury verdict against 3M. *LePage's, Inc. v. 3M,* 324 F.3d 141 (3d Cir.2003) ( *"LePage's II"* ), *cert. denied* --- U.S. ----, 124 S.Ct. 2932, 159 L.Ed.2d 835 (2004).

The Complaint in the instant litigation alleges one count of monopolization in violation of Section 2 of the Sherman Act. The Complaint asserts that 3M unlawfully maintained monopoly power in the transparent tape market through its bundled rebate programs FN1 and through exclusive dealing arrangements with various retailers. The Complaint further alleges that, as a result of 3M's conduct, Bradburn and other class members FN2 have "suffered antitrust injury." (Compl.¶ 27). The damages period in this case runs from October 2, 1998 to the present. (*Id.* ¶ 2). On August 11, 2003, Bradburn filed a Motion for Partial Summary Judgment seeking the application of collateral estoppel several issues which Bradburn claimed had been fully and fairly litigated in *LePage's.* By Memorandum and Order dated March 30, 2005, the Court denied Bradburn's Motion, but found that collateral estoppel nonetheless applied to find certain

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2005 WL 1819969 (E.D.Pa.), 2005-2 Trade Cases P 74,928
(Cite as: Not Reported in F.Supp.2d)

facts without substantial controversy and established upon the trial of the instant action pursuant to Federal Rule of Civil Procedure 56(d). (03/30/2005 Memorandum and Order at 41.) 3M thereafter filed a motion for reconsideration or, in the alternative, certification for interlocutory appeal of paragraphs 2, 3 and 4 of the Court's May 30, 2005 decision. 3M argued, *inter alia,* that the Court improperly granted collateral estoppel effect to the jury's findings in *LePage's* for the entire time period from June 11, 1993 to October 13, 1999. By Memorandum and Order dated June 9, 2005, the Court granted in part 3M's motion for reconsideration, and amended the May 30, 2005 Order to read as follows:

> FN1. As described at length in the *LePage's* litigation, 3M's bundled rebate programs provided purchasers with significant discounts on 3M's products. However, the availability and size of the rebates were dependant upon purchasers buying products from 3M from multiple product lines. *See LePage's II,* 324 F.3d at 154-55.

> FN2. On August 18, 2004, the Court certified as a class "[a]ll persons who directly purchased invisible or transparent tape from 3M between October 2, 1998 and the present, who have not purchased, for resale under the class member's own label, any 'private label' invisible or transparent tape from 3M or any of 3M's competitors at any time from October 2, 1988 to the present." (August 18, 2004 Memorandum and Order.)

**\*2** 1. For the time period from June 11, 1993 to October 13, 1999, the relevant market in this matter is the market for invisible and transparent tape for home and office use in the United States;

2. For *some period of time between* June 11, 1993 and October 13, 1999, 3M possessed monopoly power in the relevant market, including the power to control prices and exclude competition in the relevant market;

3. For *some period of time between* June 11, 1993 and October 13, 1999, 3M willfully maintained such monopoly power by predatory or exclusionary conduct; and

4. For *some period of time between* June 11, 1993 and October 13, 1999, 3M's predatory or exclusionary conduct harmed competition.

(06/09/2005 Order at 1-2) (emphasis added to amended language.) Because the Court's reconsideration of the May 30, 2005 Order granted 3M substantial relief, the Court found that 3M's alternative motion to certify for interlocutory appeal had been mooted, but granted 3M ten days to renew said motion. Presently before the Court is 3M's Motion for Certification of paragraphs 2, 3, and 4 of the Court's June 9, 2005 collateral estoppel Order for interlocutory appeal.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if "[1] such order involves a controlling question of law [,] as to which [2] there is substantial ground for difference of opinion [,] and [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Before an order can be certified for interlocutory appeal, all three factors identified in the statute must be satisfied. *See Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974). "The decision to certify an order for appeal under § 1292(b) lies within the sound discretion of the trial court." *Fox v. Horn,* No. Civ. A. 98-5279, 2000 WL 288388, at \*1 (E.D.Pa. Mar.13, 2000) (quotation omitted). Certification, however, is only appropriate in exceptional circumstances, and "[a] district court should be mindful of the strong policy against piecemeal appeals when exercising its discretion." *Koken v. Viad Corp.,* No. Civ. A. 03-5975, 2004 WL 1240672, at \*1 (E.D.Pa. May 11, 2004).

In deciding whether to certify an order for interlocutory appeal, "[t]he key consideration is ... whether the order ... truly implicates the policies favoring interlocutory appeal.... Those policies ... include[ ] the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Katz,* 496 F.2d at 756. "The moving party bears the burden of showing ... that 'exceptional circumstances justify a departure from the basic policy

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1819969 (E.D.Pa.), 2005-2 Trade Cases P 74,928
(Cite as: Not Reported in F.Supp.2d)

against piecemeal litigation and of postponing appellate review until after the entry of a final judgment." ' *Fox,* 2000 WL 288388, at *1 (quoting *FDIC v. Parkway Executive Office Ctr.,* Nos. Civ. A. 96-121, 96-122, 1997 WL 611674, at *2 (E.D.Pa. Sept.24, 1997)).

### III. DISCUSSION

**\*3** 3M seeks certification of the Court's June 9, 2005 Order for interlocutory appeal on grounds that it pertains to a controlling question of law as to which substantial grounds for difference of opinion exist, and immediate appellate review would materially advance the ultimate termination of this litigation.

### A. *Controlling Question of Law*

"The Third Circuit has defined a controlling issue of law as one that 'would result in a reversal of a judgment after final hearing." ' *Koken,* 2004 WL 1240672, at *1 (quoting *Katz,* 496 F.2d at 755). Accordingly, "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz,* 496 F.2d at 755. In determining whether an issue presents a controlling question of law, courts should be mindful that resolution of the issue need not be determinative of any claim on the merits, and a possible reversal of the relevant order need not terminate the litigation. *Katz,* 496 F.2d at 755. Rather, the Third Circuit has suggested that " 'controlling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of expense to the litigants [is] deemed ... to be a highly relevant factor." *Id.* (internal citations omitted); *see also* 19 James W. Moore, et al., *Moore's Federal Practice* ¶ 203.31[3] (3d ed.2003) (a controlling question of law is one that "has the potential of substantially accelerating disposition of the litigation").

Bradburn opposes the Motion on grounds that the Court's June 9, 2005 Order does not involve a question of law because 3M's objections to the Court's ruling turn on what was actually litigated in *LePage's,* which is a largely factual issue. However, the issue before the Court is not the nature of 3M's

objections to the Court's June 9, 2005 Order, but whether the Order itself concerns a controlling question of law. *See Katz,* 496 F.2d at 755. There can be little doubt that the Court's June 9, 2005 Order applying offensive collateral estoppel to certain facts established in *LePage's* was a ruling on an issue of law. *See Witowski v. Welch,* 173 F.3d 192, 197 (3d Cir.1999) (in reviewing collateral estoppel order, question is whether district court correctly applied the law to determine that certain matters were barred). Moreover, the Court finds that, although the June 9, 2005 Order "clearly is not 'controlling' of these proceedings in the sense that it is substantively dispositive of their outcome[,] ... the ruling does control many aspects of the proceedings in substantial respects." *In re Microsoft Corp. Antitrust Litig.,* 274 F.Supp.2d 741, 742 (D.Md.2003) (certifying court's order applying collateral estoppel to preclude relitigation of certain issues in antitrust action for interlocutory appeal). Indeed, the Court's June 9, 2005 collateral estoppel Order not only governs the scope of the discovery the parties are currently conducting and the evidence that the parties will present at trial, but also impacts the other consumer actions that were filed against 3M in this Court and elsewhere. *See Id.* Of course, "[n]othing is more central to the proper structuring of the private antitrust litigation[s] against [a Defendant] than the question of whether [the Defendant] is entitled to relitigated findings found against it in [the prior litigation]." *Id.* The June 9, 2005 Order is, therefore, serious to the practical and legal conduct of this and the other related antitrust actions against 3M. *Katz,* 496 F.2d at 755. Moreover, the parties do not dispute that the Order, "if erroneous, would be reversible error on final appeal." *Id.* Accordingly, the Court concludes that the June 9, 2005 collateral estoppel Order presents a controlling question of law.

### B. *Substantial Ground for Difference of Opinion*

**\*4** Substantial grounds for difference of opinion exist when there is genuine doubt or conflicting precedent as to the correct legal standard. *P. Schoenfeld Asset Mgmt. LLC. v. Cendant Corp.,* 161 F.Supp.2d 355, 360 (D.N.J.2001); *Parkway,* 1997 WL 611674 at *3. Bradburn argues that there is no ground for difference of opinion in this case because there is no genu-

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 1819969 (E.D.Pa.), 2005-2 Trade Cases P 74,928
**(Cite as: Not Reported in F.Supp.2d)**

ine doubt about the correct legal standard, and the Court's collateral estoppel memoranda fully addresses all relevant issues. The June 9, 2005 Order approved the application of offensive non-mutual collateral estoppel, which the Third Circuit has cautioned against invoking in most cases without "extreme care." *Witowski,* 173 F.3d at 206. The Court notes that the June 9, 2005 Order required the resolution of several difficult issues regarding the availability of collateral estoppel in this judicial circuit, which the Third Circuit has not yet had an opportunity to address. The Court, therefore, finds that substantial ground for difference of opinion exists regarding whether collateral estoppel is available in this action to the full extent permitted by the June 9, 2005 Order.

### C. *Material Advancement of Litigation's Ultimate Termination*

The Third Circuit has noted that in assessing the requirement of a likelihood of materially advancing the ultimate termination of the litigation, "[t]he district court's opinion about settlement possibilities, and the potential length of a possibly avoidable trial, and similar matters" is crucial. *Katz,* 496 F.2d at 754. It has generally been recognized that " '[w]here discovery is complete and the case is ready for trial an interlocutory appeal can hardly advance the ultimate termination of the litigation." ' *Parkway,* 1997 WL 611674, at *3 (quoting *Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1112 (E.D.Pa.1992)). Bradburn argues that an interlocutory appeal would not materially advance the ultimate termination of this litigation because the appeal could very well result in the prolongation rather than prompt termination of this action. However, 3M has not requested a stay pending the Third Circuit's review of the June 9, 2005 Order, and insists that "[t]he discovery and trial deadlines [will be] unaffected, and the case [will] proceed [ ] as scheduled." (Def.'s Reply at 5.) Moreover, this case is not one which stands on the brink of ultimate disposition in this Court, as discovery is currently underway and trial is not scheduled to take place until May 30, 2006. Rather, there is a strong likelihood that the trial of this action will require lengthy proceedings, and the taking of an appeal with respect to the June 9, 2005 Order after discovery, trial, and final decision by this Court could

result in the need for additional discovery and a new trial. *See Gen. Dynamics Corp. v. Am. Telephone and Telegraph Co.,* 658 F.Supp. 417, 419 (N.D.Il.1987). Accordingly, denial of the instant Motion could result in "a senseless waste of private and public resources and an unconscionable delay in the final resolution of these proceedings." *In re Microsoft,* 274 F.Supp.2d at 743. The Court, therefore, finds that the June 9, 2005 Order concerns a controlling question of law as to which substantial ground for difference of opinion exist, an appeal from which may materially advance the ultimate termination of this litigation.

### IV. CONCLUSION

**\*5** The Court concludes that all three factors under 28 U.S.C. § 1292(b) are satisfied and certification for interlocutory appeal of paragraphs 2, 3, and 4 of the June 9, 2005 Order truly implicates the policies favoring interlocutory appeal. Accordingly, 3M's "Motion for Certification of the Court's June 9, 2005 Collateral Estoppel Order Pursuant to 28 U.S.C. § 1292(b)" is granted. As neither party has asked for a stay of the litigation pending interlocutory appeal, the discovery and trial deadlines remain unaffected and the case will proceed as scheduled in this Court.

An appropriate Order follows.

### *ORDER*

AND NOW, this _____ day of _____, 2005, upon consideration of Defendant 3M's "Motion for Certification of the Court's June 9, 2005 Collateral Estoppel Order Pursuant to 28 U.S.C. § 1292(b)" (Doc. No. 243), all documents submitted in response thereto, and the Argument held on May 9, 2005, IT IS HEREBY ORDERED that said Motion is GRANTED, and paragraphs 2, 3 and 4 of the Court's June 9, 2005 Order (Doc. No. 235) ARE HEREBY CERTIFIED for interlocutory appeal. IT IS FURTHER ORDERED that this case shall continue to PROCEED as scheduled in this Court, and all dates and deadlines REMAIN as previously ordered.

E.D.Pa.,2005.
Bradburn Parent Teacher Store, Inc. v. 3M
Not Reported in F.Supp.2d, 2005 WL 1819969 (E.D.Pa.), 2005-2 Trade Cases P 74,928

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1819969 (E.D.Pa.), 2005-2 Trade Cases P 74,928

(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1357783 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion in Limine (Apr. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 1760137 (Trial Motion, Memorandum and Affidavit) Motion in Limine to Preclude Bradburn from Introducing Videotape Reenactments of Testimony (Apr. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 2067718 (Verdict, Agreement and Settlement) Plaintiffs' Submission of Stipulated Facts (Apr. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 2068019 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Objections and Counter-Designations to Defendant's Designation of Deposition Testimony (Apr. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 2068020 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Objections to Defendant's Exhibits (Apr. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 2068021 (Trial Motion, Memorandum and Affidavit) Defendant 3M's Counter Designations and Objections to Plaintiff's Designations (Apr. 28, 2006) Original Image of this Document (PDF)

• 2006 WL 2068022 (Trial Motion, Memorandum and Affidavit) Defendant 3M's Counter Designations and Objections to Plaintiff's Designations from Lepage's Inc. v. 3M (Apr. 28, 2006) Original Image of this Document (PDF)

• 2005 WL 2682789 (Trial Motion, Memorandum and Affidavit) Third Parties Henkel Corporation and Henkel Consumer Adhesives Inc.'s Consolidated Memorandum in Opposition to 3m's Motion to Modify Protective Order (Aug. 2, 2005) Original Image of this Document (PDF)

• 2005 WL 2682792 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of 3M's Motion for Certification of the Court's June 9, 2005 Collateral Estoppel Order Pursuant to 28 U.S.C. | 1292(b) (Aug. 1, 2005) Original Image of this Document (PDF)

• 2005 WL 4428917 (Trial Motion, Memorandum and Affidavit) Class's Opposition to 3M's Motion for Certification of the Court's June 9, 2005 Collateral Estoppel Order (Jul. 8, 2005) Original Image of this Document (PDF)

• 2005 WL 4428915 (Trial Motion, Memorandum and Affidavit) Class' Reply in Support of Proposed Scheduling Order and in Opposition to 3M Proposed Scheduling Order (Jun. 9, 2005) Original Image of this Document (PDF)

• 2005 WL 4428916 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of 3M's Motion for Reconsideration of March 30, 2005 Order or Certification of Interlocutory Appeal (May 10, 2005) Original Image of this Document (PDF)

• 2005 WL 4428914 (Trial Motion, Memorandum and Affidavit) 3M'S Memorandum in Opposition to the Motion to Quash of Henkel Corporation and Henkel Consumer Adhesives, Inc. and in Support of its Motion to Compel (Jan. 20, 2005) Original Image of this Document (PDF)

• 2004 WL 3770562 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Meijer, Inc. and Meijer Distribution Inc.'s Motion for Reconsideration (Nov. 5, 2004) Original Image of this Document (PDF)

• 2004 WL 4443219 (Trial Motion, Memorandum and Affidavit) Class Representative's Opposition to Meijer's Motion to Intervene (Oct. 18, 2004) Original Image of this Document (PDF)

• 2004 WL 4443222 (Trial Motion, Memorandum and Affidavit) 3M'S Memorandum in Opposition to Meijer, Inc. and Meijer Distribution Inc.'s Motion to Intervene (Oct. 18, 2004) Original Image of this Document (PDF)

• 2004 WL 2250213 (Trial Pleading) Complaint (Sep. 17, 2004) Original Image of this Document (PDF)

• 2004 WL 3770561 (Trial Pleading) Complaint-Class Action Tury Trial Demanded (Feb. 23, 2004) Original Image of this Document (PDF)

• 2003 WL 24309663 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Support of Motion for Partial Summary Judgment (Sep. 30, 2003) Original Image of this Document (PDF)

• 2003 WL 24309662 (Trial Pleading) Defendant 3M Company's Answer to Plaintiff Bradburn Parent/ Teacher Store, Inc.'s Complaint (Aug. 28, 2003) Original Image of this Document (PDF)

• 2003 WL 25150748 () Hearing Before the Honorable John R. Padova United States District Court Judge (Aug. 13, 2003) Original Image of this Docu-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2005 WL 1819969 (E.D.Pa.), 2005-2 Trade Cases P 74,928
**(Cite as: Not Reported in F.Supp.2d)**

ment (PDF)
• <u>2003 WL 25151055</u> (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment (Aug. 11, 2003) Original Image of this Document (PDF)
• <u>2003 WL 25151054</u> (Trial Motion, Memorandum and Affidavit) Defendant 3M Company's Reply Memorandum (Jun. 13, 2003) Original Image of this Document (PDF)
• <u>2003 WL 24309661</u> (Trial Motion, Memorandum and Affidavit) Opposition to Motion to Dismiss (May 29, 2003) Original Image of this Document (PDF)
• <u>2003 WL 24309660</u> (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of 3M Company's Motion to Dismiss Plaintiff's Complaint (Apr. 29, 2003) Original Image of this Document (PDF)
• <u>2003 WL 25151052</u> (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum Regarding Need for Discovery Regarding Competitive Benchmark Information (Feb. 14, 2003) Original Image of this Document (PDF)
• <u>2002 WL 33849125</u> (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of 3M'S Motion to Transfer Venue (Dec. 2, 2002) Original Image of this Document (PDF)
• <u>2002 WL 33849124</u> (Trial Motion, Memorandum and Affidavit) Complaint-Class Action (Nov. 27, 2002) Original Image of this Document (PDF)
• <u>2002 WL 33849123</u> (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant 3M'S Motion to Transfer Venue (Nov. 22, 2002) Original Image of this Document (PDF)
• <u>2:02cv07676</u> (Docket) (Oct. 02, 2002)
• <u>2002 WL 33009233</u> (Trial Pleading) Complaint-Class Action (Oct. 1, 2002) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# E

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1992 WL 96333 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
In re GroupHealth Partnership,
Inc.E.D.Pa.,1992.Only the Westlaw citation is cur-
rently available.
United States District Court, E.D. Pennsylvania.
In re GROUPHEALTH PARTNERSHIP, INC.,
Debtor.
**Misc. No. 92-0124.**

April 21, 1992.

Douglas N. Candeub, Adelman, Lavine, Gold & Lev-
in, Philadelphia, Pa., for debtor.
Michael T. Scott, Reed, Smith, Shaw & Mc Clay,
Philadelphia, Pa., for Hahnemann University.

*MEMORANDUM/ORDER*
LOUIS H. POLLAK, Senior District Judge.
**\*1** This action comes before this court on the motion
of Hahnemann University ("Hahnemann") for leave
to appeal an interlocutory order of the Bankruptcy
Court. Debtor GroupHealth Partnership, Inc.
("GroupHealth"), a health maintenance organization
("HMO") organized under the laws of Pennsylvania,
voluntarily petitioned for protection under Chapter 11
of the bankruptcy code. Hahnemann, a creditor of
GroupHealth, moved to dismiss the petition on the
grounds that GroupHealth was a "domestic insurance
company" within the meaning of section 109(b)(2) of
the bankruptcy code and therefore could not be a
debtor under Chapter 11.FN1 Hahnemann acknow-
ledged that for most purposes HMOs are not subject
to the laws governing insurance companies in
Pennsylvania. *See* 40 P.S. § 1560(a). It pointed,
however, to 40 P.S. § 1560(b), which provides as fol-
lows:

All health maintenance organizations shall be subject
to the following insurance laws:

(b) Any rehabilitation, liquidation or conservation of
a health maintenance organization shall be deemed to
be the rehabilitation, liquidation or conservation of an
insurance company and shall be conducted under the
supervision of the commissioner pursuant to the law
governing the rehabilitation, liquidation or conserva-

tion of insurance companies.

Hahnemann reads section 1560(b), together with sec-
tion 109(b)(2) of the bankruptcy code, to mean that
for liquidation purposes GroupHealth is an insurance
company and therefore does not qualify as a debtor
under the bankruptcy code.

The Bankruptcy Court, in an opinion and order dated
March 4, 1992, denied Hahnemann's motion to dis-
miss, concluding that section 1560(b) did not affirm-
atively remove HMOs from the coverage of the bank-
ruptcy code but rather gave the Insurance Department
of the Commonwealth of Pennsylvania the option to
oversee the liquidation of HMOs on a case-by-case
basis. Because the Insurance Department had ex-
pressed a desire to defer to the Bankruptcy Court in
the present case, the court concluded that it had juris-
diction over GroupHealth's petition.

Hahnemann now seeks review of that conclusion. It
concedes that the denial of its motion to dismiss was
an interlocutory order. Review of interlocutory orders
of the bankruptcy court is available in the district
court pursuant to 28 U.S.C. § 158(a), which provides
in relevant part:

The district courts of the United States shall have jur-
isdiction to hear appeals from final judgments, or-
ders, and decrees, and, with leave of the court, from
interlocutory orders and decrees, of bankruptcy
judges entered in cases and proceedings referred to
the bankruptcy judges under section 157 of this title.

Section 158(a) provides little guidance to a district
court concerning the circumstances under which in-
terlocutory appeal is appropriate. In the absence of
such guidance from section 158(a) itself, courts in
this district and others have turned to 28 U.S.C. §
1292(b), which governs interlocutory appeals from
the district court to the court of appeals.FN2 *See In re
Neshaminy Office Bldg. Assocs.,* 81 B.R. 301, 302
(E.D.Pa.1987); *In re Bertoli,* 58 B.R. 992, 995
(D.N.J.1986); *In re Moskowitz,* 14 B.R. 307, 308
(S.D.N.Y.1981). That section, as modified by the
courts to apply to interlocutory appeals from the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1992 WL 96333 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

bankruptcy court, states that a district court may accept an interlocutory appeal when it is satisfied that (1) a controlling question of law is involved; (2) the question is one where there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation. *See In re Neshaminy,* 81 B.R. at 303.

*2 In the present case, the question of whether an HMO is an insurance company for the purposes of the bankruptcy code is a purely legal question that controls whether the Bankruptcy Court has jurisdiction over GroupHealth's petition. Moreover, the question appears to be one where there is substantial ground for difference of opinion. Hahnemann points to two cases in which courts concluded that HMOs were domestic insurance companies for the purposes of the bankruptcy code. *See In re Beacon Health, Inc.,* 105 B.R. 178 (Bankr.D.N.H.1989); *In re Portland Metro Health, Inc.,* 12 B.R. 102 (Bankr.D.Ore.1981). The Bankruptcy Court distinguished those two cases by noting that in each case the party seeking dismissal for lack of jurisdiction was not a creditor but rather the insurance department of the relevant state. That distinction may well be a viable one. Nevertheless, at least facially, there is a split among courts in different circuits. I therefore conclude that, for the purposes of the present motion, Hahnemann has shown that substantial grounds for difference of opinion exist.

Finally, the issue that Hahnemann seeks to have addressed on interlocutory appeal is clearly one that, if decided in Hahnemann's favor, would materially advance the ultimate termination of the litigation by depriving the Bankruptcy Court of jurisdiction over GroupHealth's petition.

For these reasons, interlocutory appeal in the present case is appropriate. It is therefore ORDERED and DIRECTED that Hahnemann's motion for leave to appeal is GRANTED.

> FN1. Section 109(b) states in relevant part:
> "A person may be a debtor under chapter 7 of this title only if such person is not- ... (2) a domestic insurance company...." 11 U.S.C. § 109(b). Section 109(d) further provides:

> "Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under chapter 11 of this title." 11 U.S.C. § 109(d).

> FN2. Section 1292(b) provides in relevant part:
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order....

E.D.Pa.,1992.
In re GroupHealth Partnership, Inc.
Not Reported in F.Supp., 1992 WL 96333 (E.D.Pa.)

END OF DOCUMENT

# F



Not Reported in B.R.                                                                                        Page 1
Not Reported in B.R., 2002 WL 923932 (Bkrtcy.D.Del.), 49 Collier Bankr.Cas.2d 132, 39 Bankr.Ct.Dec. 138
**(Cite as: Not Reported in B.R.)**

**H**

In re PHP Healthcare Corp.Bkrtcy.D.Del.,2002.
United States Bankruptcy Court, D. Delaware.
In re: PHP HEALTHCARE CORPORATION, Reorganized Debtor
PHP LIQUIDATING LLC, Plaintiff
v.
PRICEWATERHOUSECOOPERS LLP, Defendant
No. 98-2608JKF, 00-665.

May 7, 2002.

Neal J. Levitsky, Esquire, Counsel to Plaintiff, PHP Liquidating LLC.
Christopher J. Lhulier, Esquire, Counsel to Defendant, PricewaterhouseCoopers, LLP.

MEMORANDUM OPINION [FN1]

> FN1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.FITZGERALD, Bankruptcy J.

**\*1** Before the court is the Motion for Summary Judgment [FN2] filed by Defendant, PricewaterhouseCoopers LLP (PwC), asking this court to enter judgment in its favor, as a matter of law, in this Adversary, filed by Plaintiff, PHP Liquidating LLC, (PHP Liquidating), to avoid and recover allegedly preferential transfers. PHP Liquidating was granted the authority to pursue avoidance actions on October 12, 1999, when the Debtor's Plan of Liquidation was confirmed. This Adversary was filed on June 21, 2000. During the bankruptcy, PwC was appointed to represent the Debtors as accountants and financial advisors.

> FN2. Adv. Docket No. 19.

PHP Liquidating alleges that PwC received $900,000+ in the preference period on an antecedent debt, which fact was not disclosed to the court in PwC's affidavit of disinterestedness. PwC alleges that PHP Liquidating is foreclosed from raising this issue. We are requested to enter judgment in PwC's favor in this Adversary based upon orders entered on December 29, 1998,[FN3] and December 30, 1999.[FN4] PwC

contends that the orders cannot be modified, because of the doctrine of *res judicata*. The orders appointed PwC as accountants and financial advisors to the Debtor and approved PwC's final fee applications, respectively. PwC contends that in entering the orders, the court implicitly recognized that PwC could not have received a preference because, otherwise, PwC would not be disinterested. If it was not disinterested, the court could not have authorized it to represent the Debtors. Based on PwC's circuitous analysis, the court must expound on the concept of disinterestedness as reflected from the record in this case. Memoranda of Law have been filed by both parties and oral argument was held on June 21, 2001. No cross-motion for summary judgment has been filed.

> FN3. Bankr.Docket No. 150. *See also* Adv. Docket No. 21, Exhibit C to Declaration of Christopher Lhulier in Support of PricewaterhouseCoopers LLP's Motion for Summary Judgment (Declaration of Lhulier).

> FN4. Bankr.Docket No. 1195. *See also* Adv. Docket No. 21, Exhibit E to Declaration of Lhulier.

PwC contends that PHP Liquidating's failure to object to or appeal from either order makes both final and, therefore, subject to the doctrine of *res judicata*. PHP Liquidating counters that *res judicata* does not apply to this Adversary regardless of the finality of orders because PwC failed to disclose to the court that it had received a preference from PHP Healthcare Corporation. PHP Liquidating argues that this nondisclosure prevented the court from determining whether PwC was a "disinterested professional" as required by § 327 of the Bankruptcy Code. PHP Liquidating further contends that *res judicata* applies only when the claims asserted are similar, even if not actually litigated, which, it further argues, is not the case here.

*Watson v. Eastman Kodak,* 235 F.3d 851, 854 (3rd Cir.2000), reminds us that a motion for summary judgment can be granted only when "there is no genuine issue as to any material fact and ... the mov-

Not Reported in B.R.                                                                                    Page 2
Not Reported in B.R., 2002 WL 923932 (Bkrtcy.D.Del.), 49 Collier Bankr.Cas.2d 132, 39 Bankr.Ct.Dec. 138
(Cite as: Not Reported in B.R.)

ing party is entitled to judgment as a matter of law." PwC admits that *Watson* also makes clear that it bears the burden of proof to show that there is no genuine issue of material fact.

Although the application to retain PwC as Debtor's accountant and financial advisor contained information about amounts paid by Debtor to PwC during the year before the Chapter 11 petition was filed,[FN5] the application does not disclose that within the 90 days prior to filing PwC was paid more than $900,000. PHP Liquidating argues that at trial it will prove that the payments within the 90 days prepetition meet the elements of a preference, particularly focusing on the manner and timing of the prepetition payments.

> FN5. PHP Liquidating's Memorandum in Opposition to Defendant, PwC's Motion for Summary Judgment, pages 2 and 3, Adv. Docket No. 26, and Memorandum in Support of Defendant PwC's Motion for Summary Judgment, page 3, Adv. Docket No. 20. The application disclosed, *inter alia,* that, as of the petition date, Debtor incurred fees and costs of approximately $725,000 for PwC's services in connection with potential restructuring and the subsequent chapter 11 filing; that PwC had received $1,880,000 from Debtor in the year prior to the petition date (including an initial retainer of $100,000); and that PwC waived the remaining unpaid fees and expenses owed to it of approximately $660,000 as of the petition date.

*2 Standards for granting summary judgment have been announced by the Court of Appeals for the Third Circuit in numerous cases, among them, *Clausen Co. v. Dynatron/Bondo Corp.,* 889 F.2d 459 (3rd Cir.1989), which dealt with the interplay between *res judicata* and summary judgment. *Clausen* found that "[s]ince in granting summary judgment ..., the bankruptcy court relied upon the *res judicata* effect of an interlocutory rather than a final judgment, that court erred, and on appeal the district court should have reversed the summary judgment." *Id.* at 466. The instant procedure deals with orders of this court which, PwC argues, are final. In essence,

PwC views this Adversary as a collateral attack on the orders.

There are three factors determinative of a *res judicata* question: a final judgment on the merits; an identity of parties or their privities; and a subsequent action based on the same cause of action as in the first case. *Corestates Bank, N.A. v. Huls Am. Inc .,* 176 F.3d 187, 194 (3rd Cir.1999). As to the two orders in question, clearly the first element (i.e., final judgment on the merits) is met. Whether or not the second requirement is met,[FN6] we hold that the third is not. PwC correctly notes from *Corestates,* 176 F.3d at 202, that courts scrutinize the totality of circumstances when deciding *res judicata* claims in a bankruptcy case to determine whether "there is an 'essential similarity of the underlying events giving rise to the various legal claims." ' (Citation omitted.) PwC argues that there is essential similarity between the application for appointment of it as financial advisor/accountant to Debtor and its fee application on the one hand and the preference action on the other. We disagree. Although PwC could not be compensated if it were not first appointed, *see F/S Airlease II, Inc. v. Simon,* 844 F.2d 99 (3rd Cir.), *cert. denied* 488 U.S. 852, 109 S.Ct. 137 (1988), the relationship between appointment and payment of fees begs the question inherent in this Adversary action. PwC argues that the order authorizing PwC to render professional services to Debtor, under § 327, should be interpreted to imply that it was "disinterested." If it was implicitly disinterested, PwC argues, it could not be the holder of a preference. PwC recognizes the teaching of *In re First Jersey Securities, Inc.,* 180 F.3d 504, 511-14 (3d Cir.1999), in which counsel was disqualified from serving as a professional because it had received a preferential payment. The difference there and here is that in *First Jersey,* the issue of the preference arose in the appointment of counsel phase of the case, but here, the issue was not raised until this Adversary was filed.

> FN6. The Debtor-in-Possession hired PwC as its accountant. The Plaintiff in this Adversary is a different entity which has some attributes of a successor with privity, but, arguably, not all. We need not address this issue at this time.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                          Page 3
Not Reported in B.R., 2002 WL 923932 (Bkrtcy.D.Del.), 49 Collier Bankr.Cas.2d 132, 39 Bankr.Ct.Dec. 138
(Cite as: Not Reported in B.R.)

The fact that PwC raises an argument of "implicit disinterestedness," in light of its involvement in *U.S. Trustee v. Price Waterhouse,* 19 F.3d 138 (3rd Cir.1994), is surprising. In that case, the Court of Appeals disapproved PwC's predecessor, Price Waterhouse, from serving as the Debtor's accountant because it held a prepetition claim. Thus, PwC is well aware that to serve as a professional in a chapter 11, it must be disinterested *in fact.* To be disinterested, it cannot hold a prepetition claim. If PwC accepted a preferential payment to avoid the need to waive a prepetition claim and failed to disclose same, it will be no better off than if it had held the claim unsatisfied. Conversely, even if this court could distinguish Third Circuit law and find that PwC was disinterested on the date the bankruptcy was filed because, as of that date, it did not hold a prepetition claim, its liability to the estate, if elements of a preference are proven, is an entirely different matter that is not dependent upon a determination of disinterestedness.

**\*3** Regardless of the ultimate outcome on the preference, the professional must substantiate its disinterestedness. The court did not "infer" disinterestedness. It found disinterestedness based on information disclosed by PwC, which has proven to be incomplete. The court was not informed of the payments that PwC received which are now alleged to be preferential.

*In re First Jersey Securities Inc.,* 180 F.3d 504 (3rd Cir.1999), held that counsel was not "disinterested," within the meaning of § 101(14)(A) and (E) and § 327(a), because an actual conflict of interest arose when counsel received a preferential payment. Counsel was disqualified from serving in the case. In *First Jersey Securities,* on the date it filed bankruptcy the debtor transferred restricted stock to its counsel so that the stock could be sold with proceeds applied, in part, to prepetition, unpaid fees and costs. Debtor and counsel disclosed the transfer but neither disclosed that it had been made in the preference period. The U.S. Trustee and the Securities Exchange Commission, a creditor, objected to counsel's application to be retained on the basis that the stock transfer was a preference. The bankruptcy court approved the employment. On appeal, the court held that the payment was a voidable preference because it was a payment

made on an antecedent debt. Counsel's claim arose when the services were performed, not when the invoice was sent to the client. Moreover, the timing of the payment was suspect, the amount deviated from the pattern previously established by the parties, and the form (stock rather than cash) was unusual. As such, the payment was not in the ordinary course or according to ordinary business terms.

The facts of *First Jersey Securities* are not on all fours with those at bench. However, the Court of Appeals clearly articulated its view that a professional cannot escape scrutiny by accepting a preference. Because the Court of Appeals had no difficulty finding that the elements of the preference were established, it did not see the need to examine the adequacy of the disclosure in the application to be retained as a professional under Fed.R.Bankr.P.2014(a). The court decided that the holder of an avoidable preference had an actual conflict and was not disinterested. In the instant case, the bankruptcy court was deprived of the opportunity to consider the effect of the alleged preference because the parties did not specifically disclose the transactions that would have prompted the inquiry.

PwC also argues that PHP Liquidating's preference action is essentially similar to both the Debtor's application to approve PwC's appointment as financial advisor/accountant and PwC's final fee application and concludes that *res judicata* applies to bar further litigation. Again, we disagree. PwC's argument does not fully appreciate the rationale of *First Jersey Securities.* Although the application to retain PwC for professional services contains substantial and significant information about PwC's prepetition relationship with Debtor, it does not disclose material information; that is, that a $900,000 payment from Debtor to PwC occurred within the preference period.

**\*4** PwC quotes a proposition from one of our recent decisions, *In re York,* 250 B.R. 842, 845 (Bankr.D.Del., 2000), that "a final order that is not appealed cannot be collaterally attacked in a later proceeding even if the order was entered in error." This language of *In re York* speaks to a Chapter 13 plan confirmation order, not to an order which appointed a professional. However, the merits of the or-

Not Reported in B.R.                                                                                                    Page 4
Not Reported in B.R., 2002 WL 923932 (Bkrtcy.D.Del.), 49 Collier Bankr.Cas.2d 132, 39 Bankr.Ct.Dec. 138
(Cite as: Not Reported in B.R.)

ders appointing PwC and authorizing its fees are not at issue in this proceeding. What is at issue is the *res judicata* effect of those orders on an entirely different cause of action. We note, since PwC directs our attention there, that the relevant statutory reference concerning applications of professional is to sections of the Bankruptcy Code dealing with their retention and compensation. Section 327(a) provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section § 330(a)(1) provides:After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103

-

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person....

These provisions have been interpreted such that courts may deny compensation to professionals with conflicts, who are not appointed prior to rendering services, and who are not disinterested.[FN7]

> FN7. *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3rd Cir.1988), and *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3rd Cir.1998).

In *In re BH & P Inc.*, 949 F.2d 1300 (3rd Cir.1991), the bankruptcy court's ruling on the issue of disinterestedness of a trustee and counsel who breached a duty of disclosure was upheld. The bankruptcy court determined that both were not disinterested, that both should be disqualified, and that both had knowingly and intentionally breached a duty of disclosure. The district court upheld the findings regarding disinterestedness and disqualification. The Court of Appeals for the Third Circuit, after determining that the existence of interdebtor claims would not in every instance require disqualification, held that the bank-

ruptcy court was correct on all three findings. The appellate court interpreted § 327(a) and analyzed the detriment to the estate created by disqualification of counsel. It stated:

... the issues centering upon the bankruptcy court's disqualification and removal of Maggio and RGZ could well affect assets in the three on-going Chapter 7 proceedings. The disqualification and removal were imposed, in part, in order to ensure that conflicts of interest would not affect the viability of BH & P's contested claims against Herman and Berkow. Furthermore, the court's ruling has the more remote but no less real effect of increasing the estates' administrative costs by requiring that separate trustees and professionals be retained in each case.

*5 *Id.* at 1307. The court balanced the interests of judicial economy with disinterestedness of professionals hired by debtor and found the latter more important. Further in the decision the court reasoned:As the district court noted, section 101(14)(E), the so-called "catch-all clause" governing lack of disinterest, has been held "broad enough to include anyone who 'in the slightest degree might have some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" '

*Id.* at 1309 (citations omitted).[FN8] If we were to apply the Court of Appeals' interpretation of § 101(14)(E), we would be pressed to inquire whether there is a material fact in dispute as to whether PwC was a "disinterested person" within the meaning of § 327(a), and whether the court's approval of PwC was improvident in light of information first presented in this Adversary. However, in this Adversary, we are not called upon to take that route. All we need do is determine whether PwC's appointment as a professional and approval of fees in the case prohibits an action to recover an undisclosed and allegedly preferential payment. We find that neither order prohibits the Adversary on the facts of this case. Because the issues in the Order of appointment and the order approving fees do not involve the elements of a preference under § 547 or § 550, *res judicata* is inapplicable.

> FN8. We take note of the analysis in *In re*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                    Page 5
Not Reported in B.R., 2002 WL 923932 (Bkrtcy.D.Del.), 49 Collier Bankr.Cas.2d 132, 39 Bankr.Ct.Dec. 138
**(Cite as: Not Reported in B.R.)**

*Park-Helena Corp., 63 F.3d 877 (9th Cir.1995), cert. denied sub nom. Neben & Starrett, Inc. v. Chartwell Financial Corp., 516 U.S. 1049, 116 S.Ct. 712 (1996):*
The firm did not initially explain that the payment was actually made by ... president, Meyer, out of Meyer's personal checking account. It only disclosed these details after Chartwell objected to [the] fee request.... [It is argued] that the distinction between Meyer and "the Debtor" is one of form over substance because Meyer's personal check reflected funds that he owed to Park-Helena. Thus [it is argued] the retainer was paid with funds "of the debtor," and the statement in the Application for Employment, that [payees] received a retainer "paid by the debtor," was accurate and sufficient.
We reject this argument.... "Coy, or incomplete disclosures ... are not sufficient." '
*63 F.3d at 880-81* (citations omitted). Although *Park-Helena* dealt with the application for fees by an attorney, the underlying principle of candor toward the bankruptcy court by a professional requesting appointment for and professional fees from a Debtor applies.

There are material facts in dispute as to whether the payments PwC received in the preference period are avoidable. Thus, this action will proceed to trial. For the foregoing reasons, we find that PwC has not sustained its burden to show that judgment can be entered in its favor, as a matter of law, and its motion for summary judgment is, therefore, denied. Neither the court's order authorizing PwC to serve as Debtor's accountant and financial advisor nor its order approving fees considers the alleged preferential payments. Neither PwC nor Debtor disclosed an alleged preference to the court at any appropriate time regarding appointment or payment of fees. Both were under a continuing duty to disclose that payments were made within the preference period. It is no longer possible to litigate, in a motion to retain or in an application for final fees, the question of whether PwC received a preference, but this Adversary seeking to prove the preference will go forward.

An appropriate order will be entered.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND SETTING DATE FOR STATUS CONFERENCE

AND NOW, this 7th day of May, 2002, for the reasons expressed in the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED, and DECREED that the Motion for Summary Judgment of PRICE-WATERHOUSECOOPERS, LLP is DENIED.

It is FURTHER ORDERED that the a status conference to discuss pretrial matters and schedule trial shall be held on June 18, 2002, at 12:30 p.m., Courtroom # 1, in Delaware.

Bkrtcy.D.Del.,2002.
In re PHP Healthcare Corp.
Not Reported in B.R., 2002 WL 923932 (Bkrtcy.D.Del.), 49 Collier Bankr.Cas.2d 132, 39 Bankr.Ct.Dec. 138

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# G

LEXSEE 2006 U.S. DIST. LEXIS 92772



Analysis
As of: Feb 05, 2007

**STEEL PARTNERS II, L.P., Plaintiff, v. LOUIS V. ARONSON II, ROBERT A. ARONSON, BARBARA L. COLLINS, CARL L. DINGER, PAUL H. EINHORN, ERWIN M. GANZ, I. LEO MOTIUK, DARYL K. HOLCOMB, GERARD J. QUINNAN, JUSTIN P. WALDER and SAUL H. WEISMAN, Defendants.**

**Civil Action No. 05-CV-1983 (DMC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2006 U.S. Dist. LEXIS 92772*

**December 22, 2006, Decided**

**NOTICE:** [*1] NOT FOR PUBLICATION

**PRIOR HISTORY:** *Steel Partners II, L.P. v. Aronson, 2006 U.S. Dist. LEXIS 21218 (D.N.J., Apr. 13, 2006)*

**COUNSEL:** For STEEL PARTNERS II, L.P., Plaintiff: JACK M. KINT, JR., LEAD ATTORNEY, OLSHAN, GRUNDMAN, FROME, ROSENZWEIG & WOLOSKY, LLP, NEW YORK, NY.

For LOUIS V. ARONSON, II, ROBERT A. ARONSON, BARBARA L. COLLINS, PAUL H. EINHORN, ERWIN M. GANZ, DARYL K. HOLCOMB, I. LEO MOTIUK, GERARD J. QUINNAN, JUSTIN P. WALDER, SAUL H. WEISMAN, Defendant: LAURENCE B ORLOFF, LEAD ATTORNEYS, ORLOFF, LOWENBACH, STEFELMAN & SIEGEL, P.A., ROSELAND, NJ.

For CARL W. DINGER, III, Defendant: RUSSELL SCOTT BURNSIDE, LEAD ATTORNEY, GREENBERG, DAUBER, EPSTEIN & TUCKER, PC, NEWARK, NJ.

**JUDGES:** Dennis M. Cavanaugh, U.S.D.J.

**OPINION BY:** Dennis M. Cavanaugh

**OPINION:** DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the motion of Defendants Louis V. Aronson II, Robert A. Aronson, Barbara L. Collins, Paul H. Einhorn, Erwin M. Ganz, I.

Leo Motiuk, Daryl K. Holcomb, Gerard J. Quinnan, Justin P. Walder and the Estate of Saul H. Weisman ("Moving Defendants") to amend the Court's interlocutory Order denying the Defendants' motion for summary judgment to include a certification of appealability pursuant to *28 U.S.C. § 1292(b)*. No oral argument was heard pursuant [*2] to *Rule 78 of the Federal Rules of Civil Procedure*. After carefully considering the submissions of the parties and based upon the following, it is the finding of this Court that the Moving Defendants' motion is **denied.**

**I. BACKGROUND**

The factual background of this case was recounted in detail in the Court's April 19, 2006 Opinion and is hereby incorporated by reference.

Previously in this case, Defendants moved for summary judgment *inter alia* on statute of limitations grounds and pursuant to the Colorado River abstention doctrine. This Court's Opinion and Order filed April 19, 2006 ("April 19 Order") denied Defendants' motions for summary judgment.

The Moving Defendants bring this motion pursuant to *28 U.S.C. § 1292(b)* and *Fed. R. App. P. 5(a)(3)*, asking this Court to amend its April 19 Order to include a certification permitting interlocutory appeal. Specifically, the Moving Defendants ask this Court to amend the order to state that:

> (a) a substantial basis exists for a difference of opinion on controlling ques-

tions of law with respect to the statute [*3] of limitations defense to the First and Second Claims for relief, in particular because of the holding of the Third Circuit in *Ronson Corp. v. Steel Ptnrs. II, L.P. 119 Fed. Appx. 392, 2005 WL 233364 (3d Cir. 2005)*, and

(b) an immediate appeal will materially advance the termination of the litigation, given that defendants' motion sought dismissal of all federal claims as a matter of law, and *inter alia*, dismissal of the remaining state law claims under *28 U.S.C. § 1367.*

Defs. Br. at 1.

## II. DISCUSSION

### A. Statement Pursuant to *28 U.S.C. § 1292(b)*

The Moving Defendants ask this Court to certify its April 19, 2006 Opinion and Order denying the Moving Defendants' summary judgment motion for appeal. Pursuant to *28 U.S.C. § 1292(b)*, a district court may certify for immediate appeal an otherwise non-appealable order, if it is satisfied "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of [*4] the litigation." The statute imposes three requirements before certification may be granted. The order to be certified must (1) involve a controlling question of law; (2) offer substantial ground for difference of opinion; and (3) have the potential to materially advance the ultimate termination of the litigation, if appealed immediately. See *Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir.1974)*; *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 355, 358 (D.N.J. 2001)*. Certification is entirely within the district court's discretion even if the three criteria are met; indeed, courts have acknowledged that "certification is appropriate only in exceptional cases." *Piazza v. Major League Baseball, 836 F. Supp. 269, 270 (E.D. Pa. 1993)* (internal quotations and citations omitted); see also *Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir.1976)*.

#### 1. Controlling Question of Law

In the Third Circuit, a controlling issue of law is one that if erroneously decided, would result in reversible error on final appeal. *Katz, 496 F.2d at 755*. Controlling means "serious to the conduct of the litigation, [*5] either practically or legally." *Russ-Tobias v. Pa. Bd. of Prob. & Parole, No. Civ. A. 04-0270, 2006 U.S. Dist. LEXIS 8062, 2006 WL 516771, *33 (E.D. Pa. Mar. 2, 2006)* (citing *Katz, 496 F.2d at 756*).

The Moving Defendants argue that the April 19 Order involves "controlling questions of law" because it goes to issues of timeliness under the applicable statute of limitations. Contrary to the Moving Defendants' contentions, this Court's conclusion that the action was timely was not a decision on a pure question of law, but rather, a mixed question of law and fact. In order to determine that the Sarbanes-Oxley statute of limitations was tolled, this Court considered whether the alleged agreement amongst Defendants to purchase shares of Common Stock constituted a new agreement and not a continuation of a previous agreement. Even though timeliness is a question of law, the applicability of a statute of limitations can involve fact-sensitive inquiries. See *Haley v. Hendricks, 83 Fed. Appx. 452, 454 n.2 (3d Cir. 2003)* (noting that the tolling of a statute of limitations is not a pure question of law); *Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc., Civil No. 4:05-CV-0033, 2006 U.S. Dist. LEXIS 27889, 2006 WL 1289545, *3 (M.D. Pa. May 9, 2006)*; [*6] *Muniz v. Rexnord Corp., No, 04 C 2405, 2004 U.S. Dist. LEXIS 17939, 2004 WL 2011393, *4 (N.D. Ill. Sept. 3, 2004)*. Certification to appeal the interlocutory Order is inappropriate when the underlying order involved mixed questions of fact and law because "Section 1292(b) was not designed to secure appellate review of 'factual matters' or of the application of the acknowledged law to the facts of a particular case, matters which are within the sound discretion of the trial court.' " *Hulmes v. Honda Motor Co., 936 F. Supp. 195, 210 (D.N.J. 1996)*. For these reasons, the Moving Defendants cannot satisfy the first requirement for *§ 1292(b)* certification.

#### 2. Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion exists when there is a genuine doubt or conflicting precedent as to the correct legal standard. *Bradburn Parent Teacher Store, Inc. v. 3M, No. Civ. A. 02-7676, 2005 U.S. Dist. LEXIS 15815, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005)*. To show that a substantial ground for difference of opinion exists, a moving party must demonstrate that the court applied one legal standard [*7] and that "other courts have substantially differed in applying that standard." *Harter v. GAF Corp., 150 F.R.D. 502, 518 (D.N.J. 1993)*.

In this case, the Moving Defendants argue that there is a "substantial basis for concluding that there exists an inconsistency between the April 19 Opinion and the opinion of the Third Circuit in *Ronson Corp., et al. v. Steel Partners II, L.P., et al., 119 Fed. Appx. 392 (3d Cir. 2005)* with regard to the effect of "inquiry notice" and the running of the statute of limitations on claimed

2006 U.S. Dist. LEXIS 92772, *

violations on *Section 13(d)* of the Securities Exchange Act of 1934." Defs. Br. at 11-12. Specifically, the Moving Defendants argue that this Court improperly characterized "continuous violations" as "new agreements," and, as such, the statute of limitations should not have been tolled. This argument is unpersuasive because the Moving Defendants have not shown that there is a substantial ground for difference of opinion as to a *legal* standard. Rather, the Moving Defendants dispute whether this Court properly applied the statute of limitations to the facts of this case. Thus, the Moving Defendants fail to satisfy the second [*8] requirement for *§ 1292(b)* certification.

3. Whether the Appeal Will Materially Advance the Termination of this Litigation

Due to the fact that the Moving Defendants failed to satisfy either the first or second requirements for *§ 1292(b)* certification, there is no reason to continue with this part of the analysis. All three requirements must be satisfied for a court to certify an issue for appeal. Therefore, the Court will not address this issue.

## IV. CONCLUSION

For the reasons stated, it is the finding of this Court that Moving Defendants' motion to amend the Court's interlocutory Order is denied. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh

U.S.D.J.

Date: December 22, 2006

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>GENESIS HEALTH VENTURES, INC., *et al.*,<br><br>Debtors. | Case No. 00-2692 (PJW)<br>Jointly Administered |
| RICHARD HASKELL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDMAN, SACHS & CO., *et al.*,<br><br>Defendants. | Adv. Pro. No.: 04-53375 (PJW) |

## CERTIFICATE OF SERVICE

I, Steven K. Kortanek, hereby certify that on this 6th day of February 2007, I caused the

***Joint Reply in Support of Motion for Leave to Appeal*** annexed hereto to be served upon the

following parties in the manner indicated:

***Via E-mail & First Class Mail***
R. Bruce McNew
Taylor & McNew LLP
2710 Centerville Road, Suite 210
Wilmington, Delaware 19808
Tel: (302) 655-9200
Fax: (302) 655-9361
*Plaintiff's Counsel*

***Via E-mail & First Class Mail***
Stanley M. Grossman, Esq.
H. Adam Prussin, Esq.
Leigh Handelman Smollar, Esq.
Pomerantz Haudek Block
    Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, NY 10017
Tel: (212) 661-1100
Fax: (212) 661-8665
*Plaintiff's Counsel*

_____
Steven K. Kortanek (Del. Bar No. 3106)

DEL1 65652-1